515 S.E.2d 268

**Michael Anthony ELLIS, Deceased by Deborah Scott Ellis, as Personal Representative of the Estate of Michael Anthony Ellis, Appellant,**

v.

**David OLIVER, M.D., Respondent.**

**No. 2960.**

Court of Appeals of South Carolina.

Heard Dec. 8, 1998.
Decided March 15, 1999.

Kimberly A. Raber, of Columbia; Michael J. Miller; and Deborah A. Vitale, both of Alexandria, VA, for appellant.

108

Kay G. Crowe and James W. Alford, both of Barnes, Alford, Stork & Johnson, of Columbia, for respondent.

STILWELL, Judge:

Michael Anthony Ellis (Ellis), now deceased, initiated this medical malpractice action against Dr. David Oliver. After Ellis's death, Deborah Scott Ellis (Mrs. Ellis), in her capacity as personal representative of Ellis's estate, was substituted as plaintiff, and the complaint was amended to include wrongful death and survival actions. Mrs. Ellis now appeals an order of the trial court that reduced a jury award in her favor by the amount of her settlement with Richland Memorial Hospital (Richland Memorial). We affirm.

## BACKGROUND

In October 1988, Ellis was injured in a single car accident. As a result of his injuries, he was admitted to Richland Memorial. Doctor Oliver, an anesthesiologist, was among the medical personnel who treated Ellis's injuries. In an effort to establish an airway, Dr. Oliver made five unsuccessful attempts to insert a tube into Ellis's nasal passage. Doctor Oliver then tried five times to orally intubate Ellis, but was not successful. An airway was eventually established by a surgical resident. Ellis went into neurogenic shock during the attempted intubations and was rendered quadriplegic. Approximately two years later, Ellis died as a result of complications related to his quadriplegia.

Ellis instituted a negligence action against Richland Memorial in 1989 and later instituted this action against Dr. Oliver. In March 1993, Mrs. Ellis entered into an agreement with Richland Memorial releasing the hospital from further liability upon payment of $140,000. This amount equaled the Richland Memorial bills incurred by Ellis as a result of the hospital's alleged negligence.

During the trial against Dr. Oliver, Mrs. Ellis did not introduce any of the Richland Memorial bills. The jury awarded Mrs. Ellis $411,102 for the survival action and $288,-898 for the wrongful death action. Doctor Oliver appealed, and during the pendency of his appeal, he filed a motion seeking to reduce the jury award by the amount of the

settlement Mrs. Ellis received from Richland Memorial. The trial court determined it did not have jurisdiction to adjudicate the motion during the pendency of the appeal. After the supreme court affirmed the jury's verdict, the trial court heard Dr. Oliver's motion for set-off. The trial court reduced the jury's verdict by $140,000, the amount Mrs. Ellis received in the settlement with Richland Memorial.

On appeal, Mrs. Ellis contends that the trial court erred (1) by allowing Dr. Oliver to raise the issue of set-off without complying with procedural requirements, (2) by applying South Carolina Code § 15–38–50, and (3) by allowing set-off under these particular circumstances since no double recovery would have occurred.

## DISCUSSION

### I.

Mrs. Ellis first argues that the trial court erred by not requiring Dr. Oliver to follow the rules of civil procedure in requesting the set-off. She contends the trial court erred by not treating Dr. Oliver's motion for set-off as an untimely Rule 59(e) motion.[1] We disagree.

South Carolina Code § 15–38–50 provides:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

S.C.Code Ann. § 15–38–50 (Supp.1998).

The court's primary concern in interpreting a statute is to ascertain and effectuate legislative intent. *State v. Four*

---

1. This rule provides: "A motion to alter or amend the judgment shall be served not later than 10 days after receipt of written notice of the entry of the order." Rule 59(e), SCRCP.

*Video Slot Machs.*, 317 S.C. 397, 453 S.E.2d 896 (1995); *Spartanburg County Dep't of Soc. Servs. v. Little*, 309 S.C. 122, 420 S.E.2d 499 (1992). "A statute must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *Spartanburg*, 309 S.C. at 125, 420 S.E.2d at 501. "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994). "Where the terms of the statute are clear, the court must apply those terms according to their literal meaning." *Paschal v. State Election Comm'n*, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995); *see also Carolina Power & Light Co. v. City of Bennettsville*, 314 S.C. 137, 442 S.E.2d 177 (1994).

This is an issue of first impression in South Carolina. The question is whether the set-off required pursuant to § 15–38–50 arises by operation of law or must the party entitled to the set-off make a timely motion pursuant to the rules of civil procedure? In enacting § 15–38–50, the General Assembly did not provide the procedural details by which the set-off could be claimed. The statute likewise does not require that the rights thereunder be asserted at any particular juncture in the litigation. The section simply explains the ultimate effect of a release, covenant not to sue, or covenant not to enforce when two or more persons are liable in tort for the same injury or wrongful death.

A similar but not exact situation has been addressed by our supreme court. In *Broome v. Watts*, 319 S.C. 337, 461 S.E.2d 46 (1995), the supreme court addressed the issue of whether an underinsured motorist (UIM) carrier was entitled to set-off the amount of a liability insurance carrier's settlement. After the liability carrier settled with the plaintiffs, the plaintiffs proceeded to trial under their UIM coverage. After a jury award in favor of the plaintiffs, the judge granted the UIM carrier a set-off in the settlement amount. The plaintiffs contended that because set-off was not pled as an affirmative defense, it was improperly granted by the trial judge. The supreme court determined that the "[s]et-off was statutorily

mandated, was not a matter properly triable to the jury, and therefore was not a matter constituting an affirmative defense which [the UIM carrier] was under a duty to plead and prove." *Id.* at 342, 461 S.E.2d at 49. Although *Broome* dealt with a different type of set-off and a different procedural issue, our supreme court made clear that a statutory set-off is a mandate, not an allowance that the benefitting party must establish.

■ When there is no South Carolina case directly on point, our courts may look to other jurisdictions to determine if the issue has been decided and if the decision is persuasive authority. *See Williams v. Morris,* 320 S.C. 196, 464 S.E.2d 97 (1995).

The courts of other jurisdictions have determined that the right to set-off under statutes similar to § 15–38–50 arises by operation of law. In *Cleere v. United Parcel Serv., Inc.,* 669 P.2d 785 (Okla.Ct.App.1983), the court, construing a similar statute, held that the "settlement credit function is for the court. . . . [T]his [is] analogous to our comparative negligence cases in which the court is required to make the mathematical calculations after the jury renders its verdict." *Id.* at 788.

In *Ryder v. Benfield,* 43 N.C.App. 278, 258 S.E.2d 849 (1979), the defendant apparently failed to call the attention of the trial judge to the fact that the plaintiff had settled with one of the other defendants. The judge therefore signed the judgment for the full amount awarded. Citing statutory language identical to our § 15–38–50, the North Carolina Court of Appeals determined that "the ends of justice require that the amendment be made at this time" and remanded the case so that the amount of the settlement could be deducted from the amount awarded. *Id.* at 856.

In *Biro v. Fairmont Gen. Hosp., Inc.,* 184 W.Va. 458, 400 S.E.2d 893 (1990), the court outlined several judicially-approved methods by which the amount of a settlement paid by a joint tortfeasor can be used as a credit against a verdict owed by another joint tortfeasor.

> The jury can be informed of the amount of the settlement and instructed that they must deduct this amount from their award of damages. Another approach is to make no reference to the settlement; and, after the verdict is returned

and judgment entered, the defendant may utilize the settlement figure "when an attempt to satisfy the judgment is made." Finally, by stipulation of the parties, the amount of the settlement can be used as a credit and deducted from the amount of the jury verdict.

*Id.* at 896 (quoting *Groves v. Compton*, 167 W.Va. 873, 280 S.E.2d 708, 711 (1981) (internal citation omitted)).

The issue has also been explored in the federal arena. In *Parker v. O'Rion Indus., Inc.*, 769 F.2d 647 (10th Cir.1985), the court held that when "the settlement evidence is relevant only for reducing the damage amount, the trial court should 'simply appl[y] the settlement credit against any verdict rendered, as required by law.' Consequently, the district court . . . had an affirmative duty to reduce plaintiffs tort judgment by the settlement obtained from the joint tortfeasor. . . ." *Id.* at 650 (internal citation omitted).

■ We hold that in the absence of a claim of bad faith, the function of the trial court is limited to applying the settlement credit pursuant to § 15–38–50. Thus, Mrs. Ellis's agreement to release Richland Memorial discharged a portion of the judgment against Dr. Oliver by operation of law without the need to file a motion under the South Carolina Rules of Civil Procedure. The set-off was statutorily mandated and thus properly applied.

## II.

Mrs. Ellis next asserts the trial court erred in finding that Richland Memorial and Dr. Oliver were liable for the "same injury" or "same wrongful death" within the meaning of § 15–38–50. In support of this argument, Mrs. Ellis notes that separate claims were brought against Richland Memorial and Dr. Oliver and that the complaint against Richland Memorial did not include an action for wrongful death. Thus, she asserts, the settlement she reached with regard to the negligence and survival causes of action against Richland Memorial could not have been for the same "wrongful death" for which she received a verdict in her case against Dr. Oliver. We disagree.

Mrs. Ellis's claims against Richland Memorial and Dr. Oliver arose out of the same factual scenario. Originally, all three of the actions brought by the decedent or Mrs. Ellis were consolidated for trial in Richland County. However, because Dr. Oliver resided in Lexington County, a motion for change of venue was granted and the case tried separately in Lexington County. *See Ellis v. Oliver*, 307 S.C. 365, 415 S.E.2d 400 (1992). Mrs. Ellis contends that since the measure of damages is different in the two cases, then different injuries occurred and § 15–38–50 is inapplicable. Admittedly, the measure of damages in wrongful death and survival causes of action differ. Mrs. Ellis, however, confuses the concept of damages with the meaning of the word injury as used in the statute. Injury, as used in the statute, is broad enough to include all damages, including those attributable to both survival and wrongful death causes of action which result from the joint negligence of the various responsible parties. Thus, the trial court did not err in applying § 15–38–50.

## III.

Finally, Mrs. Ellis asserts that the trial court erred in applying § 15–38–50 because in these circumstances the doctrine of set-off did not serve its intended purpose of preventing a double recovery. In support of this argument, Mrs. Ellis notes that she made no attempt during the trial to present the medical expenses attributable to Richland Memorial's alleged negligence (the exact amount of the settlement). Thus, she contends, the jury's verdict in her case against Dr. Oliver did not take into account Ellis's Richland Memorial bills or her settlement with Richland Memorial.

Application of the settlement credit was statutorily mandated in this case. Section 15–38–50 grants the court no discretion in determining the equities involved in applying a set-off once a release has been executed in good faith between a plaintiff and one of several joint tortfeasors. Moreover, Mrs. Ellis does not assert she was prevented from presenting to the jury evidence of the full amount of Ellis's medical bills. We recognize that a strict application of the statute may lead to unintended results; however, this is a matter for the legislature to correct if our interpretation is contrary to its intent. *See Adkins v. Comcar Indus., Inc.*, 316 S.C. 149, 151, 447

114

S.E.2d 228, 230 (Ct.App.1994) (An appellate court "has no legislative powers. Our sole function is to determine and, within constitutional limits, give effect to the intention of the legislature while the responsibility for the justice or wisdom of legislation rests exclusively with the legislature, whether or not we agree with the laws it enacts." (internal citation omitted)), *aff'd,* 323 S.C. 409, 475 S.E.2d 762 (1996).

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

HOWELL, C.J., and ANDERSON, J., concur.