662 S.E.2d 444

VORTEX SPORTS & ENTERTAINMENT,
INC., Respondent/Appellant,

v.

R. David WARE; Ware & Associates, Inc.; Constangy, Brooks
& Smith, L.L.C.; and CSMG, Inc., Defendants,

of whom CSMG, Inc., is the Appellant/Respondent.

No. 4380.

Court of Appeals of South Carolina.

Heard April 8, 2008.
Decided April 28, 2008.
Rehearing Denied June 26, 2008.

198

Frank R. Ellerbe, III, and Rachel G. Peavy, both of Columbia; Sonya D. Naar and Steven Hunter, both of Chicago, for Appellant/Respondent.

A. Camden Lewis, Keith M. Babcock, and Ariail E. King, all of Columbia, for Respondent/Appellant.

SHORT, J.

In this cross-appeal from a tort action, CSMG, Inc., appeals the trial court's (1) failure to grant its directed verdict motions; (2) admission of expert testimony; and (3) admission of speculative damages evidence. Vortex Sports & Entertainment, Inc., (Vortex) appeals the trial court's set-off of its award with its settlement with R. David Ware. We affirm.

## FACTS

Vortex, formed in 2000 in Columbia, South Carolina, is a sports agency corporation. Ware and Bralyn Bennett each owned one-third of Vortex, and Terry Williams and Walt Gee each owned one-sixth. Ware was the President of Vortex's Team Sports Division and served as Vortex's attorney. Vortex did not issue any stock or formalize the corporation in writing. Vortex's clients were primarily National Football League (NFL) players to whom it provided financial, legal, and marketing assistance. The owners agreed Bennett would be the only paid employee and the other owners would be paid once Vortex made a profit.

In the NFL, sports agents and players enter into Standard Representation Agreements (SRAs). SRAs permit an agent

to negotiate on the player's behalf. Under NFL policy, SRAs can only be signed by the agent. Industry custom includes agents who verbally assign their SRAs to the companies with whom they are affiliated. An SRA generally includes a "compensation for service" clause entitling the agent to a certain percentage of the player's compensation in exchange for the agent's services in negotiating the contract. The NFL limits the agent's maximum compensation to three percent. A player may terminate an SRA with five days' notice to the agent. NFL teams do not give players guaranteed contracts, and thus, agents' fees are not guaranteed.

Bennett and Ware were Vortex's sports agents. When Vortex began operating, Bennett represented three players and Ware represented one player. When those players were paid, Vortex would receive the agent's fees. Vortex pledged the income stream from all of its SRAs as collateral for its bank loans.

In 2001, Vortex signed five new clients. By spring of 2003, Vortex had twenty clients, including Terence Newman of the Dallas Cowboys and Clinton Portis of the Washington Redskins. Vortex anticipated earning $400,000 to $500,000 solely from Newman's contract. Vortex, however, was still a fledging company with a substantial amount of debt to service. It was not yet profitable and Bennett no longer received an annual salary.

In 2003, Ware began negotiating, on Vortex's behalf, with CSMG, an Illinois sports agency that was considering acquiring Vortex. Vortex believed CSMG would provide marketing services for Vortex's clients but Vortex would continue providing contract negotiations. However, this never came to fruition. Unbeknowst to Vortex, CSMG began negotiating with Ware for him to leave Vortex and join CSMG with his Vortex clients. Ultimately, Ware began working for CSMG while he was still an officer, shareholder, and attorney for Vortex.

CSMG agreed to pay Ware a signing bonus of $200,000 and an annual salary of $150,000. Additionally, Ware would receive half of the revenues collected from players with whom he had signed SRAs. Once Ware left Vortex for CSMG, less than half of Vortex's twenty clients stayed with Vortex, while the others left for CSMG or other agencies.

Vortex filed suit against: (1) Ware; (2) CSMG; (3) Constangy, Brooks & Smith, Ware's law firm for the majority of the time he served as Vortex's attorney; and (4) Ware and Associates, Ware's law firm when he first became Vortex's attorney. The causes of action against CSMG included aiding and abetting a breach of fiduciary duty and tortious interference with a contract. Prior to trial, Vortex settled with all parties except CSMG.

At trial, CSMG moved for directed verdicts on aiding and abetting a breach of fiduciary duty and tortious interference with a contract. The trial court denied the motions. Ultimately, the jury found for Vortex on both of those causes of action.[1] The jury awarded Vortex $2,200,000 in actual damages and $500,000 in punitive damages. The trial court reduced Vortex's award by the settlements received from the other defendants. This appeal followed.

## LAW/ANALYSIS

### I.  CSMG's Appeal

#### A.  Directed Verdict

CSMG argues the trial court erred in denying its directed verdict motions.  We disagree.

When ruling on a directed verdict motion, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Sabb v. South Carolina State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). This court must follow the same standard. *Welch v. Epstein*, 342 S.C. 279, 299, 536 S.E.2d 408, 418 (Ct.App.2000). "If more than one reasonable inference can be drawn or if the inferences to be drawn from the evidence are in doubt, the case should be submitted to the jury." *Chaney v. Burgess*, 246 S.C. 261, 266, 143 S.E.2d 521, 523 (1965). This court will only reverse the circuit court when no evidence supports its ruling. *Steinke v. South Carolina Dept. of Labor, Licensing, Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999).

---

1. The jury found for CSMG on Vortex's cause of action for civil conspiracy.

### 1. Aiding and Abetting a Breach of Fiduciary Duty

CSMG argues the trial court erred in denying its motion for a directed verdict on Vortex's aiding and abetting a breach of fiduciary duty cause of action because Vortex offered no evidence from which a jury could find CSMG knowingly assisted and participated in Ware's breach. We disagree.

The elements for the cause of action of aiding and abetting a breach of fiduciary duty are: (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages. *Future Group, II v. Nationsbank*, 324 S.C. 89, 99, 478 S.E.2d 45, 50 (1996). "The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." *Id.*

The trial court ruled Ware owed Vortex a fiduciary duty. Vortex presented evidence CSMG encouraged Ware not to pay Vortex the money he received on SRAs he signed before he left for CSMG. Ware emailed David Schwartz, CSMG's senior vice-president and general counsel, stating:

> I realize that our deal is a little different since CSMG wants all my clients and the fees due to me but is not assuming the debt of VORTEX. Although I don't wholly own VORTEX I still have to pay the debt but I have no problem giving CSMG any fees that I am entitled to.

Schwartz responded: "I have added language which will, in a sense, give your guarantee that you will make CSMG whole if there are third-party claimants to the fees paid or owed by your clients, so we're willing to dump the whole asset purchase agreement." The language Schwartz referred to was a clause in CSMG's employment agreement with Ware, which stated:

> As consideration for entering into this Employment Agreement, [CSMG] expects to receive the fees currently owed to [Ware] by the clients set forth on Exhibit A [Vortex's Clients], as well as future fees that will be owed by such clients. . . . [Ware] agrees that if any fees due to be paid . . . are diminished or delayed because a third party claims entitlement to such fees, or because the client contends the fees are owed to a third party, then [Ware] shall promptly pay to [CSMG] an amount that would make [CSMG] whole. . . . "

Marty Pereira, CSMG's Executive Vice–President and Chief Financial Officer, stated in an email: "After having a couple of conversations with [Ware], I think I have [him] convinced that he should not pay off the loan, in any manner, until some kind of agreement is reached with Vortex." We note CSMG originally approached Vortex seeking to acquire the entire company, and later, enter into a collaborative venture, but ultimately decided only to hire Ware, who held the majority of Vortex's SRAs.

CSMG argues it had no actual knowledge of Ware's breach of fiduciary duties to Vortex nor did it substantially assist Ware with the breach. However, Vortex presented evidence CSMG knew Ware was one of several partners and the attorney for Vortex, not simply an employee. There is also evidence CSMG knew Ware had certain financial obligations to Vortex, even if he was no longer an employee. Therefore, there is evidence CSMG had actual knowledge Ware owed a fiduciary duty to Vortex. Further, there is evidence CSMG knowingly encouraged Ware to breach that duty because there is evidence it encouraged Ware to withhold the SRA fees from Vortex. Accordingly, because Vortex presented evidence CSMG aided and abetted in a breach of fiduciary duty, the trial court did not err in denying the directed verdict motion.

### 2. Tortious Interference with a Contract

█ CSMG next contends the trial court erred in denying its motion for a directed verdict on Vortex's tortious interference with a contract action because Vortex presented no evidence CSMG: (1) knew of Vortex's contract with Ware; (2) knew hiring Ware interfered with that contract; or (3) lacked justification to hire Ware. We disagree.

█ "The elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Camp v. Springs Mortgage Corp.*, 310 S.C. 514, 517, 426 S.E.2d 304, 305 (1993).

There is evidence CSMG knew Ware was responsible for debt repayment. Further, the inclusion of the clause in the employment contract providing that Ware would be responsible for any fees from clients in which a third party demanded

an interest is evidence CSMG anticipated Vortex might claim entitlement to the fees. We also note CSMG had previously convinced Fletcher Smith, III, an attorney and CSMG's executive vice-president of sports, to leave the law firm where he was employed to work for CSMG. CSMG knew Smith's former law firm required him to pay the law firm money received under SRAs Smith signed while working for the law firm. Although Ware was an at-will employee of Vortex, and thus, free to leave at any time, he also had certain obligations to Vortex in his positions as shareholder, vice-president, and general counsel. Furthermore, Ware had an agreement with Vortex to forward to Vortex the income from his SRAs. Clearly, as acknowledged by CSMG's emails, it had some knowledge that income from Ware's SRAs would go to the outstanding debt of Vortex. Accordingly, we find Vortex presented evidence for each of the elements of tortious interference with a contract, and thus, the trial court did not err in denying CSMG's directed verdict motion on the cause of action.

## B. Expert Witness

██ CSMG maintains the trial court erred in admitting Professor Freeman's expert testimony. We disagree.

John Freeman is a professor of law at the University of South Carolina School of Law and teaches, *inter alia*, business, agency and partnership, and legal ethics. Professor Freeman was qualified as an expert "in the field of duties owed by corporate lawyers, officers, or shareholders in connection with transactions involving business in a South Carolina closed corporation." Before Professor Freeman testified, the trial court conducted a hearing to determine the admissibility of his testimony. CSMG argued Professor Freeman should not be allowed to testify because he would be making a legal conclusion as to whether Ware owed Vortex a fiduciary duty. The trial court determined the issue of the existence of the fiduciary duty was for the court and ruled Ware owed Vortex a fiduciary duty. The trial court ruled Professor Freeman could "testify as to what occurred as far as breach of duties are concerned."

██ "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or

to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. When expert testimony is based upon facts sufficient to form the basis for an opinion, the trier of fact determines its probative value. *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 470, 494 S.E.2d 835, 846 (Ct.App.1997). Generally, expert testimony pertaining to issues of law is inadmissible. *Dawkins v. Fields,* 354 S.C. 58, 66, 580 S.E.2d 433, 437 (2003). "A trial court's ruling to exclude or admit expert testimony will not be disturbed on appeal absent a clear abuse of discretion." *Mizell v. Glover,* 351 S.C. 392, 406, 570 S.E.2d 176, 183 (2002).

CSMG relies on *Dawkins,* in which the supreme court found an affidavit by Professor Freeman inadmissible. 354 S.C. at 66–67, 580 S.E.2d at 437. In *Dawkins,* the supreme court found most of the document was legal argument regarding why the trial court should deny summary judgment. *Id.* The supreme court stated: "Professor Freeman's affidavit inappropriately attempted to usurp the trial court's role in determining whether petitioners were entitled to summary judgment." *Id.* at 65, 580 S.E.2d at 437. However, the supreme court noted an opinion is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact. *Id.* The supreme court also found the affidavit contained "some helpful, factual information," such as, Professor Freeman's opinion on the value of stock and that selling it for significantly less than that value was improper. *Id.* at 66, 580 S.E.2d at 437.

In the present case, the trial court ruled on the legal issue of whether Ware owed Vortex a fiduciary duty. *See Clearwater Trust v. Bunting,* 367 S.C. 340, 346, 626 S.E.2d 334, 337 (2006) (noting the existence of a fiduciary duty is a question of law for the court). Professor Freeman's testimony consisted of specific acts Ware committed and how those acts constituted a breach of his fiduciary duty. Specifically, Professor Freeman testified Ware participated in self-dealing by sacrificing Vortex's interests for Ware's own interest. Additionally, Professor Freeman testified Ware was deceptive to Vortex. Professor Freeman noted the lack of documents detailing Vortex's agreements and policies and testified Ware, as Vortex's general counsel, would have been responsible for prepar-

ing such agreements and his failure to do so should not entitle him to a "free pass."

We find Professor Freeman's testimony consisted of specialized knowledge that assisted the trier of fact to understand the evidence or to determine a fact in issue. He was qualified as an expert, and thus, was allowed to testify as to his opinion relating to those facts. He did not make improper legal conclusions or instructions but simply opined regarding acts Ware committed that breached his fiduciary duty. Accordingly, the trial court did not abuse its discretion in admitting Professor Freeman's expert testimony.

### C. Damages

CSMG argues the trial court erred in admitting speculative evidence of damages consisting of Vortex's lost revenue from renegotiated contracts. We disagree.

The trial court is vested with considerable discretion over the amount of a damages award, and our review of the amount of damages is limited to the correction of errors of law. *Austin v. Specialty Transp. Servs, Inc.*, 358 S.C. 298, 310–11, 594 S.E.2d 867, 873 (Ct.App.2004). In reviewing a damages award, we do not weigh the evidence, but determine if any evidence supports the award. *Id.* at 311, 594 S.E.2d at 873.

When the tortious conduct of a defendant causes a plaintiff to lose prospective profits, the plaintiff may recover such profits when he can prove: (1) it is reasonably certain that such profits would have been realized except for the tort; and (2) such lost profits can be ascertained and measured from the evidence produced with reasonable certainty. *Petty v. Weyerhaeuser Co.*, 288 S.C. 349, 355, 342 S.E.2d 611, 615 (Ct.App.1986). Certainty means the damages may not be left to mere speculation or conjecture. *Id.* However, the law does not require absolute certainty of lost profits but only reasonable certainty that the damages are not purely speculative and there exists a fairly accurate method to estimate the lost profits. *Id.*

We find Vortex's damages were not merely speculative. The trial court admitted damages for players who actually renegotiated their contracts after leaving Vortex. The trial court excluded testimony regarding players who may possibly

renegotiate their contracts in the future. Prior to Ware's departure, no player had left Vortex. Based on these facts, it is not mere speculation to determine players would have stayed with Vortex absent CSMG's actions. Accordingly, we find the trial court did not abuse its discretion in admitting damages consisting of Vortex's lost revenue from renegotiated contracts.

## II. Vortex's Appeal

Vortex contends the trial court erred in setting off the verdict by the amount of its settlement with Ware. Vortex contends the settlement with Ware was based on different causes of action than those it prevailed on against CSMG and the injury caused by CSMG was not the same as that caused by Ware. We disagree.

Section 15–38–50 of the South Carolina Code (2005) provides:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

S.C.Code Ann. § 15–38–50 (2005).

In *Ellis v. Oliver,* 335 S.C. 106, 112, 515 S.E.2d 268, 272 (Ct.App.1999), the plaintiff brought negligence causes of action against a hospital and similar causes of action including wrongful death against a doctor. The plaintiff appealed the trial court's set-off of her award from the doctor with her settlement with the hospital. *Id.* The plaintiff contended because the measure of damages was different for the two causes of action, then two different injuries occurred. *Id.* at 113, 515 S.E.2d at 272. This court noted the plaintiff's "claims against Richland Memorial and Dr. Oliver arose out of the same factual scenario" and found the plaintiff "confuse[d] the

concept of damages with the meaning of the word injury as used in the statute. Injury, as used in the statute, is broad enough to include all damages." *Id.*

In the present case, we likewise find the claims against CSMG and Ware arose out of the same factual scenario. "Section 15–38–50 grants the court no discretion in determining the equities involved in applying a set-off once a release has been executed in good faith between a plaintiff and one of several joint tortfeasors." *Id.* This court has previously recognized "a strict application of the statute may lead to unintended results; however, this is a matter for the legislature to correct if our interpretation is contrary to its intent." *Id.* Accordingly, we find the trial court did not err in setting off Vortex's award with its settlement from Ware.

## CONCLUSION

We find the trial court did not err in denying CSMG's directed verdict motions. Additionally, the trial court did not err in admitting Professor Freeman's expert witness testimony. Further, the trial court did not err in allowing damages regarding contracts of Vortex's former clients that were actually renegotiated. Finally, the trial court did not err in setting off Vortex's jury award with its settlement with Ware. According, the trial court is

**AFFIRMED.**

ANDERSON and THOMAS, JJ., concur.