724 S.E.2d 188

**Sandra C. SMITH, Respondent,**

v.

**Tracy E. WIDENER, Stacy E. Currie, Ronald Widener, The Estate of James Donald Epting, CitiStreet, LLC, and Karen S. Erickson, Defendants,**

**of whom Tracy E. Widener, Stacy E. Currie and The Estate of James Donald Epting are the Appellants.**

**No. 4959.**

Court of Appeals of South Carolina.

Heard June 7, 2011.

Decided March 28, 2012.

Amy Lohr Gaffney and John S. Nichols, both of Columbia, for Appellants.

Karl Stephen Brehmer, of Columbia, for Respondent.

FEW, C.J.

In this appeal we hold that when a plaintiff seeks actual and punitive damages arising out of the same injury, the two types of damages are part of the same claim for purposes of determining whether a nonsettling defendant is entitled to a setoff to account for funds paid to the plaintiff by a settling defendant. We reverse the circuit court's order to the contrary.

## I. Facts and Procedural History

In March 1985, James Donald Epting designated his wife, Sandra Smith, to be the beneficiary on his South Carolina Deferred Compensation Program account. In December 1990, Epting and Smith divorced. However, Epting did not remove Smith as his designated beneficiary. When Epting died in October 2006, the account held $75,410.38. Epting's daughters, Tracy Widener and Stacy Currie, were named personal representatives of Epting's estate. After discovering that Smith remained the designated beneficiary on the account, Widener and Currie asked Smith to sign a document to waive her beneficiary rights. Smith admitted to signing a document, but denied that the document she signed was a waiver of her beneficiary rights. For convenience, we refer to this document as the waiver form.

Smith also signed another form, this one seeking to enforce her beneficiary rights. We refer to this form as the beneficiary distribution form. The beneficiary distribution form listed LPL Financial Corporation, a brokerage firm where Smith already had an account, as the recipient of the funds she expected to receive from Epting's account. Smith sent the beneficiary distribution form designating LPL to CitiStreet, LLC. CitiStreet was the employee benefits provider for the

deferred compensation program, and controlled the funds from Epting's account. The beneficiary distribution form requested that CitiStreet transfer the $75,410.38 into Smith's account at LPL. At approximately the same time Smith sent the beneficiary distribution form, Widener and Currie sent the waiver form to CitiStreet.

CitiStreet processed Smith's beneficiary distribution form first, and placed $75,410.38 in Smith's account with LPL. Smith immediately withdrew $40,000.00. When CitiStreet received the waiver form from Widener and Currie, it issued a stop payment order while it reviewed the competing claims. CitiStreet eventually concluded the waiver form was valid. CitiStreet then contacted LPL, which in turn contacted Smith requesting the $40,000.00 be returned. Smith claimed her signature on the waiver form was forged and refused to return the money. CitiStreet sent the remaining $35,410.38 to Widener and Currie as personal representatives of Epting's estate.

Smith filed a lawsuit against Widener, Currie, Epting's estate, CitiStreet, and others. She asserted causes of action for civil conspiracy, conversion, slander, and fraud against Widener and Currie, and civil conspiracy, conversion, slander, and negligence against CitiStreet. At the beginning of trial, Smith settled with CitiStreet for $35,410.38. At the conclusion of the trial, the jury found in favor of Smith on her conversion cause of action against Widener and Currie in the same amount—$35,410.38. Widener and Currie made a motion asking that the damages awarded be set off by the amount of the settlement between CitiStreet and Smith. The trial court denied the motion. Widener and Currie appeal claiming the trial court erred in denying the setoff.

## II. Applicable Law

"[T]here can be only one satisfaction for an injury or wrong." *Hawkins v. Pathology Assocs. of Greenville, P.A.*, 330 S.C. 92, 113, 498 S.E.2d 395, 407 (Ct.App.1998) (internal quotation marks omitted). A settlement by a joint tortfeasor "reduces the claim against the others to the extent of any amount stipulated by the release or the covenant." S.C.Code Ann. § 15–38–50(1) (2005). Therefore, before entering judg-

ment on a jury verdict, the court must reduce the amount of the verdict to account for any funds previously paid by a settling defendant, so long as the settlement funds were paid to compensate the same plaintiff on a claim for the same injury. *Hawkins,* 330 S.C. at 113, 498 S.E.2d at 406–07. When the settlement is for the same injury, the nonsettling defendant's right to a setoff arises by operation of law. *Ellis v. Oliver,* 335 S.C. 106, 112, 515 S.E.2d 268, 271–72 (Ct.App. 1999). Under this circumstance, "[s]ection 15–38–50 grants the court no discretion ... in applying a set-off." 335 S.C. at 113, 515 S.E.2d at 272; *see also Vortex Sports & Entm't, Inc. v. Ware,* 378 S.C. 197, 210, 662 S.E.2d 444, 451 (Ct.App.2008).

In this case, Smith's claim against CitiStreet was for the same injury for which she sought damages from Widener and Currie. The essence of all Smith's claims was that the actions of the defendants denied her the right to the remaining $35,410.38 after she withdrew the initial $40,000.00. While Smith stated that claim in various causes of action, some of which overlapped between Widener and Currie and CitiStreet and some of which did not, the injury Smith alleged she suffered as a result of the tortious conduct of all defendants was the same. Therefore, the trial court was required to grant the request for a setoff.

Smith argues, however, that the settlement with CitiStreet was for punitive damages only, and thus there was no right to a setoff. We disagree. Smith's claim for punitive damages against CitiStreet was not a separate claim arising out of a separate injury as she argues. Punitive damages are a different type of damages from actual or nominal damages. However, when a plaintiff seeks actual and punitive damages in the same claim, both types of damages arise out of the same injury. Our courts have long recognized that punitive damages serve to compensate a plaintiff and vindicate his rights arising out of a wrong suffered or injury sustained. Our supreme court recently summarized this history in *O'Neill v. Smith,* 388 S.C. 246, 252, 695 S.E.2d 531, 534 (2010), stating:

Exemplary or punitive damages go to the plaintiff, not as a fine or penalty for a public wrong, but in vindication of a private right which has been willfully invaded; and indeed, it may be said that such damages in a measure compensate

or satisfy for the willfulness with which the private right was invaded, but, in addition thereto, operating as a deterring punishment to the wrongdoer, and as a warning to others.... Punitive damages have now come, however, to be generally, though not universally, regarded, not only as punishment for wrong, but as vindication of private right. This is the basis upon which they are now placed in this state.

388 S.C. at 252, 695 S.E.2d at 534 (quoting *Clark v. Cantrell*, 339 S.C. 369, 379, 529 S.E.2d 528, 533 (2000) (quoting *Rogers v. Florence Printing Co.*, 233 S.C. 567, 573, 106 S.E.2d 258, 261 (1958))).

■ Therefore, a plaintiff's claim for actual and punitive damages arising from the same injury is the same claim for purposes of setoff under section 15–38–50(1).

■ In *Ellis*, this court held that when a prior settlement involves compensation for the same injury for which the jury awarded damages, the right to setoff arises as an operation of law. 335 S.C. at 112–13, 515 S.E.2d at 271–72. Likewise, when the prior settlement involves compensation for a different injury from the one tried to verdict, there is no setoff as a matter of law. *See Hawkins*, 330 S.C. at 114–15, 498 S.E.2d at 407 (holding that Georgia and South Carolina wrongful death actions involve different injuries and therefore are separate claims with no right of setoff). On the other hand, when a settlement is argued to involve two claims, one of which involves the same injury as the claim tried to verdict and one of which does not, the circuit court must make the factual determination of how to allocate the settlement between the two claims.[1] Here, the settlement is for the same

---

1. This is what the circuit court did in *Rutland v. S.C. Dep't of Transp.*, 390 S.C. 78, 700 S.E.2d 451 (Ct.App.2010), *cert. granted,* (Oct. 19, 2011). This court affirmed the *Rutland* trial court's determination that the settlement was not properly allocated between the different claims of wrongful death and survival because there was no evidence of conscious pain and suffering. 390 S.C. at 85–86, 700 S.E.2d at 455. In this respect, *Rutland* conflicts with *Ellis*. In *Ellis*, the court of appeals stated that wrongful death and survival are the same claim for the same injury. 335 S.C. at 112–13, 515 S.E.2d at 272. The conflict between *Rutland* and *Ellis* is resolved by reference to *Bennett v. Spartanburg Railway, Gas & Electric Co.*, 97 S.C. 27, 81 S.E. 189 (1914), in which the supreme court held that wrongful death and

injury as a matter of law. Therefore, the right to setoff arises as an operation of law, and the circuit court must award a setoff.

The dissent argues there are facts in the record supporting the circuit court's determination that the settlement with CitiStreet was for punitive damages only. As we have discussed, however, our ruling is based on the point of law that actual and punitive damages are part of the same claim for one injury. Therefore, the facts discussed in the dissent are not pertinent to the analysis of whether Widener and Currie were entitled to a setoff. In any event, the facts in the record do not support the circuit court's determination. First, Smith's position that she negotiated a settlement with CitiStreet for punitive damages in the exact same amount as her actual damages claim is not credible. Second, Smith's position that she had a settlement agreement with CitiStreet which called for the parties to allocate the proceeds of the settlement completely to punitive damages is not supported by the record. In fact, at the hearing on the motion for a setoff, counsel for CitiStreet specifically denied an agreement as to how the funds would be allocated, insisting instead that the agreement called for Smith "to allocate it however you would like to."

## III. Conclusion

We hold that Widener and Currie were entitled to a setoff for the amount of Smith's settlement with CitiStreet. We reverse and remand the case to the circuit court to enter judgment in accordance with this opinion, and to conduct other proceedings as may be necessary to reach a final judgment.

**REVERSED AND REMANDED.**

PIEPER, J., concurs.

LOCKEMY, J., dissenting in a separate opinion.

---

survival actions are different claims for different injuries. 97 S.C. at 29–30, 81 S.E. at 189–90. The court stated: "Necessarily, therefore, there must be separate verdicts and separate judgments, and hence there should be separate actions." 97 S.C. at 31, 81 S.E. at 190. The conflict does not affect the rule for which we cite *Ellis*.

LOCKEMY, J.

I respectfully dissent. While I do not dispute the law cited by the majority that the right to a setoff automatically applies where the proceeds are for the same injury, I agree with the conclusion of the trial court that no portion of the settlement paid by CitiStreet accounted for the $35,410.38 actual damage claim submitted to the jury against Widener and Currie. The majority seems to combine the word "injury" with the word "claim." Smith claimed **actual** and **punitive** damages against Widener and Currie, as well as CitiStreet, for her injury due to conversion. She also separately claimed actual damages against CitiStreet alone for her injury due to negligence.

The premise set out by the majority describing the claims in this case does not reflect my reading of the complaint and record. The majority asserts that "Smith's claims against CitiStreet were for the same injury for which she sought damages from Widener and Currie." This overlooks the separate negligence claim Smith asserted against CitiStreet for its instructions to LPL. As the record reflects, LPL threatened legal action against Smith for the return of the money it advanced, and Smith sued CitiStreet for protection as well as a hold harmless assurance. Thus, Smith sought damages from CitiStreet that she did not seek from Widener and Currie. Moreover, the punitive damages Smith sought against the parties were not tied to each other. The conduct of each was different and the potential punitive liability of each differed tremendously. Nothing prevented a jury from awarding punitive damages against CitiStreet and not against Widener and Currie. In fact, in all likelihood a net worth statement would undoubtedly show significantly deeper pockets by CitiStreet than Widener and Currie. CitiStreet obviously had a lot more at risk if a jury deliberated on the ability to pay element in deciding whether to award punitive damages and against what party.

Having stated my position on the procedural premise facing the parties, let us examine the law. Interestingly, the majority seems to assert counter balancing positions. *O'Neill,* according to the majority, stands for the proposition that "a plaintiff's claim for actual and punitive damages arising from the same injury is the same claim for purposes of setoff under

section 15–38–50(1)." I respectfully do not agree that this case stands for that proposition. Be that as it may, the majority subsequently asserts that Smith's claim that her settlement with CitiStreet was to be allocated to punitive damages was not credible nor supported by the record. Although this places direct aim at the points delineated below, it does seem superfluous if we accept that actual and punitive damages are the same. However, since the majority feels the need to engage in a credibility assessment of Smith's claim as well as a legal analysis of the similarity of actual and punitive damages, I will address my dissent to each.

I do not feel the law treats actual and punitive damages the same. The simple explanation that actual damages compensate for a loss but punitive damages punish the wrongdoer and deter others from the same conduct exudes truth in the difference far beyond the ability of the most complex legal text. *O'Neill* simply adds another public policy purpose in allowing the award of punitive damages which is to vindicate the private rights of an injured plaintiff. *O'Neill* focused on punitive damages and insurance coverage and not on the relationship between punitive and actual damages. The *O'Neill* court held "it does not violate South Carolina's public policy to allow a plaintiff to seek punitive damages after signing a covenant not to execute against the personal assets of an at-fault defendant." 388 S.C. at 255–56, 695 S.E.2d at 536.

Furthermore, a higher standard of proof is required for punitive damages than actual damages. Here, CitiStreet faced the possibility of a verdict against it for actual and punitive damages. Admittedly, Widener and Currie faced the same possibility. However, nothing prevented the jury, upon sufficient evidence, from awarding actual damages against CitiStreet as well as Widener and Currie, but punitive damages only against CitiStreet. Indeed, even after CitiStreet was removed from the case, the trial court determined that sufficient evidence was presented to send the issue of damages as to Widener and Currie to the jury. The jury did not award punitive damages against Widener and Currie, but what if CitiStreet had still been in the case and the jury decided to render a punitive damage verdict against it? Would that mean that Widener and Currie would have been entitled to a

setoff relieving them of paying all of their assessed actual damages?

Before I address the issue of Smith's credibility, an interesting dilemma demands attention. CitiStreet realized it faced financial and publicity dangers that it wanted to avoid, and therefore, it desired to settle Smith's claim. In fact, CitiStreet agreed to give money to Smith and told her attorney "to allocate it however you would like to." Obviously, CitiStreet desired to get out of this case. If as the majority suggests, the settlement money is to be applied to a setoff, what incentive did Smith have in settling with CitiStreet? Why would one let out the deepest pockets in a case with a high probability of recovery? CitiStreet, and similar defendants in the future, remain without an avenue of rescue upon strict adherence to the majority decision. Plaintiffs will be hesitant to let out the deep pocket party if by doing so it cannot allocate the settlement for its benefit. The evidence in this case is very strong that Smith was due actual damages from someone. Why settle with CitiStreet to get only what you feel confident you will get anyway? CitiStreet agreed to pay Smith and let her allocate it any way she wished as long as it could get out of the case. This procedure has occurred in countless civil cases over many years.

I believe the majority walks on the edge of fact-finding by asserting that Smith's claim that the settlement from CitiStreet was to be allocated towards punitive damages was not credible. Although I hesitate to make credibility determinations at the appellate level of the judicial process as the majority does, I agree with the majority that we should examine the record to see if there is evidence to support the trial court's determination that this was not a setoff situation, but one involving damages for a different claim. This court outlined this procedure in *Rutland* when it stated "a motion for set-off is addressed to the discretion of the court and this discretion should not be arbitrarily or capriciously exercised." 390 S.C. at 83, 700 S.E.2d at 454. After the verdict against them, Widener and Currie made a motion for setoff and thus the issue presented itself to the trial court for evaluation utilizing *Rutland*. The trial court found that CitiStreet agreed to allocate the settlement proceeds for punitive damages, and, on at least two occasions, made findings that the

money was paid by CitiStreet for punitive damages. The trial court also found that Smith had a "viable claim that could have potentially resulted in a punitive damage award against CitiStreet, LLC."[2]

The following evidence supports the trial court's denial of the motion for setoff:

1. It is undisputed that Smith sued CitiStreet for the same causes of action it asserted against the other defendants with the addition of a negligence claim. This negligence claim was based on CitiStreet's action to stop payment on the transfer to LPL after Smith had already withdrawn $40,000.00. This resulted in LPL threatening to sue Smith for the return of the money. Thus, in Smith's view, CitiStreet had not only converted her money but had damaged her credit and placed her in jeopardy of a lawsuit.

2. Smith sought actual and punitive damages against all defendants, including CitiStreet, on the conversion cause of action.

3. On the day of trial, Smith and CitiStreet announced they had reached a settlement of their case. Smith, through her attorney, stated to the Court that the settlement was for $35,410.38 and that the proceeds would be allocated "toward the plaintiff's punitive damage claim." A second part of the settlement was that CitiStreet would hold Smith harmless against any claim made against her by LPL for the return of the $40,000.00.[3] Thus, the money was to be allocated for

---

2. The trial court did enter a third order upon the request of CitiStreet clarifying that it was not making an affirmative finding that CitiStreet engaged in "egregious conduct which would warrant a finding of punitive damages." As in all settlements, the trial court was not making a finding that either party was responsible but only that there was evidence for a jury to decide. To make sure its third order was not misinterpreted the court clarified that "[t]he remainder of the Court's order ... remains in full force and effect." The fact that the trial court entered three post-trial orders further indicates the full consideration the trial court gave to this issue.

3. Documents in the record indicate LPL did in fact make a claim against Smith, which pursuant to the settlement, CitiStreet paid. This was another issue that did not involve Widener or Currie.

punitive damages for conversion and the hold harmless agreement was to satisfy actual damages for negligence.

4. The trial judge inquired of the attorney for CitiStreet if he agreed with the terms of the settlement regarding punitive damages and the hold harmless agreement. CitiStreet's attorney replied, "[t]hat's correct, Your Honor."

5. During this colloquy between the court, Smith, and CitiStreet, it is significant that the attorney for Widener and Currie was present and did not object to the settlement or its terms. The court approved the settlement and CitiStreet was released from the case.

6. Because the court approved the settlement, CitiStreet, the defendant with the deepest pockets, did not have to face a jury with claims seeking actual and punitive damages. CitiStreet received what it wanted—it was out of the case.

7. The jury, in deciding the remaining issues before it, determined Widener and Currie converted money belonging to Smith and rendered a verdict in her favor for $35,410.38.[4] The jury decided not to assess punitive damages against Widener and Currie.

---

4. The majority seems to feel that this amount is key evidence in its holding that the record does not support the trial court's decision. In other words, that Smith's assertion of a punitive damage settlement is not credible. Indeed, the jury verdict is exactly the same amount CitiStreet paid to settle with Smith and represents the amount owed to Smith to completely pay in full her claim as beneficiary. However, the record does not contain any evidence as to why this amount was chosen by the parties for settlement. Maybe it was an effort at poetic justice by the wronged Smith who had to go through so many legal hoops to get what was rightfully hers. Maybe it was the full extent that CitiStreet was willing to pay after already setting aside an additional $75,410.38 for Widener and Currie and having a looming obligation to LPL pending. Maybe it was a figure that resulted from negotiations back and forth between the parties. Based on the record, one can only make suppositions. Making decisions based on appearances does not remove the decision from the realm of conjecture. It is precarious for a court to become too involved with the reasons behind settlement negotiations. In most cases, this is better left to the parties with court involvement only coming afterward to ensure the parties agree as to terms and that the terms meet basic fairness.

8. During the course of events leading up to this case and separate from the trial of the matter at issue here, the record indicates CitiStreet paid Widener and Currie the full sum of $75,410.38 that in essence a jury determined was not due them. Another effort by CitiStreet to not proceed to a jury but to settle issues in this case outside of a courtroom. Thus, even if Widener and Currie pay Smith what the jury ordered, they will still have $40,000.00 from CitiStreet.

9. The trial court held an extensive post-trial hearing in this matter pursuant to Widener and Currie's motion to designate CitiStreet and Smith's settlement as a setoff. It permitted each side to state its position and considered the applicability of section 15–38–50 to the facts and events of this case. At this hearing, counsel for CitiStreet acknowledged that he did not object to Smith allocating the proceeds of the settlement to punitive damages. In fact, counsel asserted that he "didn't care how he allocated it. We were just going to pay him, they can allocate it how they like." He even stated that during negotiations CitiStreet had proposed the wording of the settlement to be, "pursuant to your request, Plaintiff, we agree that you can allocate it to punitive damages." CitiStreet was concerned not that money was allocated toward punitive damages or that Smith had a viable claim for such, but that the record reflect that CitiStreet was dismissed from the case. To protect itself, CitiStreet requested and was granted language that clarified that it had not admitted to engaging in punitive conduct.

10. The trial court decided after considering the evidence, the arguments, the law, and the equities, that: "The record is clear that CitiStreet, LLC satisfied a potential unasserted actual damage claim against the Plaintiff by accepting responsibility for any unasserted subrogation claim by [LPL] and further extinguished any punitive exposure it may have had under the other causes of action by agreeing to pay Plaintiff [$35,-410.38] toward a punitive damage award." After finding that this claim was separate from the claim presented to the jury against Widener and Currie, the

court concluded the denial of the motion by stating, "[t]he Plaintiff had a viable claim that could have potentially resulted in a punitive damage award against CitiStreet, LLC (the settling party)." Furthermore, the trial court found that the "non-settling parties have presented no evidence the allocation was fraudulent, invalid or an unreasonable apportionment."

For the foregoing reasons, I disagree with the majority holding that the actual and punitive damages claims in this case are the same. Further, I disagree that the evidence did not support the trial court's decision after a *Rutland* analysis that Smith's settlement with CitiStreet was properly allocated toward her punitive damages claim. Thus, I respectfully dissent.