**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

Vincent C. Carter d/b/a Elite Construction Co.,
Respondent,

v.

Eagles Landing Restaurants, LLC, Appellant.

Appellate Case No. 2019-001062

───────────

Appeal From Florence County
Eugene Preston Warr, Jr., Special Referee

───────────

Unpublished Opinion No. 2022-UP-347
Heard April 12, 2022 – Filed August 24, 2022

───────────

**AFFIRMED AS MODIFIED**

───────────

Brooks Roberts Fudenberg, of Law Office of Brooks R. Fudenberg, LLC, of Charleston, for Appellant.

Gary Ivan Finklea and Patrick Buel Ford, both of Finklea Law Firm of Florence, for Respondent.

───────────

**PER CURIAM:** In this breach of contract and quantum meruit action between Vincent Carter d/b/a Elite Construction Co. and Eagles Landing Restaurants, LLC (Eagles Landing), Eagles Landing argues the special referee erred in (1) denying Eagles Landing a properly calculated setoff, (2) declining to award Eagles Landing

damages for lost profits, and (3) applying an improper standard in reviewing the parties' Rule 59(e), SCRCP, motions.  We affirm as modified.

**Facts and Procedural History**

Mohammed Makawi owns several IHOP restaurants and manages them through a limited liability company, Eagles Landing.  In 2015, Makawi sought to open a new IHOP in Charleston.  The building, a former Ruby Tuesday restaurant, had been vacant for ten to twelve years and required extensive renovations.

Carter, a general contractor and friend of Makawi, submitted a bid to renovate the building for $624,354.00.  The bid proposed a ninety-day construction schedule and included an itemized "bid breakdown" listing the costs for various aspects of the project.  Carter and Makawi executed a lump sum contract (the Contract) providing, "The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract.  The Contract Sum shall be Six Hundred Twenty Four Thousand Three Hundred Fifty Four ($624,354.00), subject to additions and deductions as provided in the Contract Documents."

The Contract required Eagles Landing to make progress payments to Carter, with final payment due after the City of Charleston issued a certificate of occupancy to the contractor, net 10 days, and specified:

> Contractor is to be paid $100,000 from this contract as a Project Management Fee.  Payments to be made to contractor as progress of work begins.  Payment and amount requested shall be at the discretion of contractor.  Typically, payment draws to contractor for payment shall be made 1/3 after start net 2 weeks.  Another 1/3 half way into project progress and final 1/3 at or near completion.

After executing the Contract, Makawi had difficulty obtaining financing and was unable to get a traditional loan to finance the project.  Ultimately, Eagles Landing borrowed approximately $500,000, and Makawi anticipated proceeds from the sale of North Carolina real estate would help fund the renovation.

After demolition began, Carter discovered mold in the building and immediately halted work.  Due to the additional work and cost of the mold remediation, Carter executed a change order.  Carter recorded several additional change orders

reflecting both Makawi's requests to amend the scope of the work and Carter's crediting of Eagle's Landing on certain cost savings.

During the course of construction, Jimmy Free, Eagles Landing's former Chief Financial Officer, paid Carter when he requested a draw, until at some point, Makawi instructed Free not to pay Carter. Then, when Eagles Landing did pay, it did not cover the full draw—instead, Carter had to "prove" what he spent on labor and materials, and he was paid only enough to cover those costs. This placed Carter in the position of being unable to pay his subcontractors. Eagles Landing began paying subcontractors directly due to filed mechanic's liens. In all, Eagles Landing paid Carter only $229,900 on the $624,354.00 Contract.

On October 23, 2015, the City issued a temporary certificate of occupancy; a permanent certificate of occupancy followed in late November. On February 10, 2016, Carter notified Eagles Landing of the remaining amount due under the Contract, which Carter calculated to be $438,306.50. On March 17, 2016, electrical contractor Carolina Construction Solutions filed an action against both Carter and Eagles Landing seeking payment for its work on the project.

Carter then filed this action for breach of contract and unjust enrichment/quantum meruit. Eagles Landing timely answered and counterclaimed for breach of contract, fraud, quantum meruit, negligence, and indemnification.

Following a nonjury trial, the special referee found Eagles Landing breached the Contract with Carter. The special referee further held that even if certain change orders were not part of the Contract, Eagles Landing was unjustly enriched based on the labor and materials Carter furnished pursuant to the change orders. The special referee acknowledged the parties agreed Eagles Landing paid $390,888.33 to third-party vendors and subcontractors for work related to the project. The order then broke down these payments into two itemized lists: one delineating Eagles Landing's $212,195.26 in third-party payments for work within the scope of the Contract, and another listing $97,607.74 in payments for work performed outside the scope of the Contract. After accounting for the previous payments to Carter, payments to third parties, and certain project-related credits, the special referee calculated Eagles Landing owed Carter $160,130.83.

Eagles Landing and Carter filed motions to alter or amend the special referee's order. While these motions were pending, Eagles Landing reached a $50,000 settlement with Carolina Construction Solutions. By supplemental order, the special referee denied the post-trial motions and increased the award to Carter

"from $160,130.83, to 176,794.99, plus additional interest due" in light of Carter's own $16,664.16 confession of judgment to Carolina Construction Solutions.

**Law and Analysis**

**I. Setoff for Carolina Construction Solutions Payments**

"An action for breach of contract seeking money damages is an action at law." *McCall v. IKON*, 380 S.C. 649, 658, 670 S.E.2d 695, 700 (Ct. App. 2008). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law. The Court will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings." *Miller Constr. Co., LLC v. PC Constr. of Greenwood, Inc.*, 418 S.C. 186, 195, 791 S.E.2d 321, 326 (Ct. App. 2016) (quoting *Temple v. Tec–Fab, Inc.*, 381 S.C. 597, 599–600, 675 S.E.2d 414, 415 (2009)). With respect to setoff requests, "South Carolina courts have consistently held 'there can be only one satisfaction for an injury or wrong.'" *Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. IMK Dev. Co., LLC*, 435 S.C. 109, 133, 866 S.E.2d 542, 555 (2021) (quoting *Smith v. Widener*, 397 S.C. 468, 471, 724 S.E.2d 188, 190 (Ct. App. 2012)).

Eagles Landing first asserts the special referee erred in failing to credit it for payments made to Carolina Construction Solutions for additional electricians and in failing to recognize the purported savings achieved under the Contract through the use of these electricians. We disagree.

Although Carter's bid estimated $92,780 for "Electrical Materials and Labor Site Work," this was a lump-sum contract requiring Eagles Landing to pay Carter a total of $624,354.00 at draw intervals "at the discretion of contractor." The Contract provided $100,000 of the contract sum was Carter's project management fee, and Carter testified he added a markup to certain estimates for the project to earn a profit.

During the course of the work, Makawi became frustrated by construction delays and demanded that Carter hire additional electricians. A June 12, 2015 change order noted:

> Carolina Construction Solutions aided in the completion
> of electrical services needed on the project. Mr. Makawi
> informed Mr. Carter to tell the original contracted

electrician that their services were no longer needed. Mr. Makawi wanted as many electricians from Carolina Construction Solutions as were available for his project to work 7 days a week if necessary to complete all electrical as quickly as possible. Mr. Makawi was informed that this would be a change order which he approved. The original electricians, Turner Electric, had been working and were completing work as per plans and specifications, however Mr. Makawi decided he wanted to go with another contractor.

The change order listed a cost of $37,397.45 to hire the additional electricians and specifically noted, "** All change orders shall be added to original contract price and be paid by owner upon completion of work, net 30. **" Makawi understood the change order would be costly; however, he claimed he did not know how much more the cost would be. In any event, Carter's bid of $92,780 for "Electrical Materials and Labor Site Work," did not contemplate hiring additional electricians to work 24/7 under Makawi's change order and demand to accelerate the construction process. Thus, we find the special referee properly declined to offset Eagles Landing's liability to Carter by either its payment to Carolina Construction Solutions or by any alleged savings under the Contract.

## II. Calculation and Crediting of Payments by Eagles Landing

Eagles Landing next asserts the special referee's mathematical or clerical error in failing to account for a remaining $81,085.33 paid as either within or outside the scope of the contract resulted in an overstatement of the amount Eagles Landing owed Carter under the Contract. We disagree.

> The trial court is vested with considerable discretion over the amount of a damages award, and our review of the amount of damages is limited to the correction of errors of law. In reviewing a damages award, we do not weigh the evidence, but determine if any evidence supports the award.

*Oaks at Rivers Edge Prop. Owners Ass'n, Inc. v. Daniel Island Riverside Devs., LLC*, 420 S.C. 424, 446, 803 S.E.2d 475, 487 (Ct. App. 2017) (quoting *Vortex Sports & Ent., Inc. v. Ware*, 378 S.C. 197, 208, 662 S.E.2d 444, 450 (Ct. App. 2008) (citation omitted)).

Eagles Landing spent $620,788.33 in connection with the renovation.  Of this, $229,990 was paid to Carter.  The parties disagree as to whether the remaining $390,788.33 in payments went to third parties on Carter's behalf within the scope of work of the Contract—and thus should offset the balance Eagles Landing owed Carter—or were payments made outside the scope of the Contract for reasons related to Makawi's change orders and supplemental demands.

The special referee found Eagles Landing made payments to twenty-nine vendors: $212,195.26 on Carter's behalf for work within the scope of the Contract and $97,607.74 to eleven other vendors for work outside the scope of the Contract.  Thus, the special referee credited Eagles Landing with a line item $212,195.26 offset towards the remaining balance it owed Carter.

Eagles Landing correctly asserts that based on the order's itemized lists, it appears the special referee failed to account for $81,085.33 in payments by Eagles Landing.  However, the special referee separately addressed additional transactions later in the order, crediting Eagles Landing with $11,285.00 paid to ARS Rescue Rooter for work within the scope of the Contract.  The special referee's damages summary on the final page of the order notes this payment as a separate line item credited to Eagles Landing in addition to the $212,195.26 credit.

Next, the special referee found Eagles Landing was not entitled to an offset credit or other award for two heating, ventilation, and air conditioning (HVAC) units because the parties agreed the HVAC system would not need to be replaced, and Carter issued a credit to Eagles Landing of $44,439.00.  The evidence in the record shows Eagles Landing paid $58,392.96 for "monthly lease total of HVAC units," and this would constitute payment outside the scope of the Contract.

Although the special referee made specific findings as to $379.480.96 of the $390,888.33 in payments, $11,407.37 remains unaccounted for.  Our review of the evidence reveals the special referee did not set forth a specific finding for $6,259.37 paid to S&D Coffee.  Carter testified he did not know what services S&D Coffee provided and explained coffee would not have been a part of his work under the Contract.  Nor did Carter's bid provide a line item for coffee equipment or any other kitchen equipment.  Eagles Landing does not argue the special referee erred in not listing this payment as within the scope of the Contract, and we see no error here.

And although the special referee credited Eagles Landing with $3,500 paid to Johnson Concrete for work performed within the scope of the Contract, the

evidence in the record shows Eagles Landing actually paid Johnson Concrete $8,548 for kitchen concrete work. Thus, it appears the accounted for $5,048 is the difference between the total payments Eagles Landing made to Johnson Concrete less the $3,500 the special referee credited as within the scope of the Contract.

We do find the special referee's order contains a scrivener's error of $100. The record establishes Eagles Landing paid Multi-tech Safety Products, Inc., a total of $26,622.00. However, the special referee's order lists $26,522.00 as the Multi-tech Safety Products payment. Correcting this results in the itemized list totaling $212,295.26. Therefore, we find the award to Carter should be reduced to $160,030.83 to account for this scrivener's error.[1] Other than this $100 deviation, the evidence supports the special referee's damages calculation.

## III. Lost Profits

Eagles Landing argues the special referee erred in failing to award $71,784.52 on its counterclaim for lost profits resulting from the postponement of the opening the restaurant due to construction delays. However, the record reflects that most, if not all, delays were due to Makawi's actions or circumstances beyond the control of either party. The initial delay in starting construction was the result of Makawi's difficulty obtaining financing. Other delays caused by the discovery of mold in the long-vacant building and Makawi's change orders cannot be attributed to Carter. Therefore, we find the special referee properly declined to award Eagles Landing damages for lost profits. *See Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48, 686 S.E.2d 200, 202 (Ct. App. 2009) ("The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach.").

## IV. Rule 59(e) motion

Eagles Landing contends the special referee erred in applying an incorrect federal standard in considering the parties' Rule 59(e), SCRCP, motions. Although the special referee erred in its initial recitation of the law, we find this error does not require reversal. In denying both parties' Rule 59(e) motions, the special referee explained:

> After considering the grounds raised in the motions of the
> Plaintiff and Defendant, and after reviewing the

---

[1] This adjustment would likewise reduce the $176,794.99 awarded by supplemental order to $176,694.99.

> transcript of the trial, including the testimony of the witnesses and the exhibits that were admitted into evidence, as well as the notes from the trial, this Court denies both the Plaintiff's Motion to Reconsider and the Defendant's Motion to Amend. The testimony and exhibits admitted into evidence at trial support the Court's findings and conclusions.

Because the special referee based its denial of the post-trial motions on the testimony and exhibits admitted into evidence—and the evidence supports the referee's findings—we find the order's error in reciting a federal standard does not warrant reversal or remand. *See e.g.*, *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 21, 602 S.E.2d 772, 778–79 (2004) (holding "it is proper to view a Rule 59(e) motion not only as a vehicle to request the trial court 'alter or amend the judgment,' but also as a vehicle to seek 'reconsideration' of issues and arguments. A motion under Rule 59(e) long has been viewed as [a] 'motion for reconsideration' despite the absence of those words from the rule. Consequently, a party usually is allowed to ask the court to reconsider its decision even if it means rehashing all or part of an argument previously presented.").

**Conclusion**

Based on the foregoing, we affirm the special referee's order as modified to account for the $100 scrivener's error in the damages award, thereby decreasing the amount Eagles Landing owes Carter to $176,694.99.

**AFFIRMED AS MODIFIED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**