695 S.E.2d 531

**Patricia O'NEILL and Michael O'Neill, Plaintiffs,**

v.

**Ormega SMITH and Yolanda Adams, Defendants.**

**No. 26826.**

Supreme Court of South Carolina.

Heard March 2, 2010.

Decided June 14, 2010.

John S. Nichols and Blake A. Hewitt, both of Bluestein, Nichols, Thompson & Delgado, of Columbia, for Plaintiffs.

Robert A. McKenzie and Damon C. Wlodarczyk, both of McDonald, McKenzie, Rubin, Miller & Lybrand, of Columbia, for State Farm Mutual Automobile Insurance Company, the Plaintiffs' Underinsured Motorist Carrier.

Justice BEATTY.

The question certified to this Court asks whether it would violate South Carolina's public policy for a plaintiff to seek an award of punitive damages in a tort action after signing a covenant not to execute against a defendant. We answer in the negative, holding it does not violate public policy because punitive damages serve additional purposes beyond merely punishing a specific individual, and the public policy as expressed in S.C.Code Ann. § 38–77–30(4) (2002) is to compensate the injured insured, not his insurer, and requires only that damages exceed the liability insurance limits of an at-fault motorist.

## I. FACTS

Patricia and Michael O'Neill (Plaintiffs) brought this negligence action against Ormega Smith and Yolanda Adams (Defendants) seeking compensatory and punitive damages as a result of a vehicular accident. The action was brought in the United States District Court for the District of South Carolina based on diversity jurisdiction. Plaintiffs served a copy of the complaint upon State Farm, their underinsured motorist (UIM) carrier, in accordance with South Carolina law.[1]

The liability insurer for Defendant Adams tendered the limits of its policy to Plaintiffs in exchange for an "Agreement and Covenant Not to Execute." The covenant provided that, in consideration of the sum of $100,000 that the insurer paid to Plaintiffs, they agreed not to execute any judgment that they might obtain against the personal assets of Defendants and

---

1. *See* S.C.Code Ann. § 38–77–160 (2002) (providing "[t]he [UIM] insurer has the right to appear and defend in the name of the underinsured motorist in any action which may affect its liability").

instead they would pursue recovery only through UIM coverage.

State Farm, in its defense role, thereafter moved for partial summary judgment on Plaintiffs' claim for punitive damages, arguing the covenant effectively relieved Defendants from personal liability; therefore, allowing Plaintiffs to seek punitive damages would be misleading to the point of thwarting public policy and would perpetuate a fraud upon the court and the jury because it would be based upon the fiction that Defendants could be punished by an award of punitive damages. The presiding judge determined there was no precedent in South Carolina on this issue and certified the following question to this Court:

## CERTIFIED QUESTION PRESENTED

Does a plaintiff who has protected a defendant from personal financial responsibility through a covenant not to execute on that defendant's assets violate the public policy of South Carolina relating to punitive damages by seeking an award of punitive damages where payment of the punitive damage award will not come from either the defendant or from a source for which the defendant is responsible?

This Court accepted the certified question pursuant to Rule 244, SCACR.

## II. STANDARD OF REVIEW

"In answering a certified question raising a novel question of law, this Court is free to decide the question based on its assessment of which answer and reasoning would best comport with the law and public policies of the state as well as the Court's sense of law, justice, and right." *Drury Dev. Corp. v. Found. Ins. Co.*, 380 S.C. 97, 101, 668 S.E.2d 798, 800 (2008).

## III. LAW/ANALYSIS

State Farm observes that "[t]he certified question accepted by this court is one of first impression in South Carolina." State Farm's "position [is] that allowing a party to seek a punitive damage award when the tortfeasor has basical-

ly been released from all potential responsibility for paying the award violates the public policy purpose of awarding punitive damages."

State Farm argues allowing a plaintiff to pursue a claim for punitive damages after signing a covenant not to execute perpetrates a fraud upon the jury and public because the tortfeasor is insulated from harm. State Farm maintains punitive damages are intended to punish the wrongdoer and to deter the wrongdoer and others from engaging in similar conduct, but in this case a covenant not to execute protects Defendants from personal liability so they cannot be punished and there is no deterrence of Defendants or others. State Farm further argues it could promote collusion among nominal adversaries and its defense could be handicapped because "Defendants have no incentive to participate or cooperate" if they do not face personal liability.

In contrast, Plaintiffs assert the South Carolina General Assembly has expressly defined "damages" in the area of automobile insurance to include both actual and punitive damages, citing S.C.Code Ann. § 38–77–30(4) (2002). They contend that, "[u]sing the certified question, State Farm asks this Court to invalidate or rewrite the plain language of the legislature in S.C.Code Ann. § 38–77–30(4) and impose the non-public policy preferred by State Farm." Plaintiffs assert "the primary policy-making body of the State has spoken directly to the certified question and stated that the public policy of this State requires automobile insurers to cover and pay for punitive damages—both in the liability context *and* in the UIM context." They maintain the covenant does not alter this clear pronouncement by the legislature.

State Farm contends Plaintiffs' "arguments are misplaced" because the certified question does not challenge whether punitive damages are generally available under UIM coverage, "but rather seeks a ruling on the very narrow issue of whether a claim for punitive damages may be prosecuted where the plaintiff has relieved the tortfeasor from any potential harm associated with a punitive damage award."

Initially, we note that the question here is centered on contracted insurance coverage pursuant to S.C.Code Ann. § 38–77–160 (2002). It is undisputed that State Farm offered

the insurance coverage for a certain premium and Plaintiffs accepted the offer and paid State Farm the requested premium. Accordingly, our attention is necessarily drawn to the language of section 38–77–160, which states in pertinent part as follows:

> Such carriers shall ... offer ... underinsured motorist coverage ... to provide coverage in the event that damages are sustained *in excess of the liability limits carried* by an at-fault ... underinsured motorist....

S.C.Code Ann. § 38–77–160 (2002) (emphasis added).

The plain and unambiguous language of the statute clearly requires that the focus be placed on the *liability insurance limits* of the at-fault motorist. Once the damages of Plaintiffs, State Farm's insureds, exceed the liability insurance limits of the at-fault motorist, State Farm's underinsurance contract with Plaintiffs is triggered statutorily. Whether or not the at-fault motorist has other assets out of which the excess damages could be paid is irrelevant. Plaintiffs are not legally required to pursue the assets of the at-fault motorist, although they may pursue the claim in order to establish the amount of excess damages sustained. Concomitantly, it is irrelevant that the excess damages are not actually paid by the at-fault motorist. This result clearly comports with the legislative intent as expressed in section 38–77–160. To conclude otherwise would violate the public policy as expressed by the legislature. The only relevant question is whether or not the damages sustained exceed the liability insurance limits of the at-fault motorist.

The legislature has defined "damages" as used in Chapter 77 governing automobile insurance to "include[ ] both actual and punitive damages." *Id.* § 38–77–30(4). The clear legislative indication is that all "damages," including actual and punitive damages, are recoverable under the pertinent insurance provisions. As a matter of law, these provisions become part and parcel of the insurance contract.[2] Further,

---

2. Policy provisions cannot exclude coverage provided by law. *See Boyd v. State Farm Mut. Auto. Ins. Co.,* 260 S.C. 316, 319, 195 S.E.2d 706, 707 (1973) ("It is settled law that statutory provisions relating to an insurance contract are part of the contract, and that a policy provision which contravenes an applicable statute is to that extent invalid.").

in examining the public policy surrounding punitive damage awards, it is readily apparent that South Carolina courts have recognized that these awards serve a multitude of purposes and are not limited solely to punishment of the individual wrongdoer.

■ Specifically, "punitive damages serve at least three important purposes: punishment of the defendant's reckless, willful, wanton, or malicious conduct; deterrence of similar future conduct by the defendant or others; and compensation for the reckless or willful invasion of the plaintiff's private rights." *Clark v. Cantrell*, 339 S.C. 369, 379, 529 S.E.2d 528, 533 (2000).

In *Clark*, we noted "the important role that punitive damages play in the American system of justice generally, and in South Carolina in particular since at least 1784." *Id.* We observed that punitive damages, in addition to punishing the defendant and deterring similar conduct by the defendant and others, serve to vindicate the private rights of the plaintiff and they provide some measure of compensation to plaintiffs for the intentional violation of those rights that is separate and distinct from the usual measure of compensatory damages:

> Exemplary or punitive damages go to the plaintiff, not as a fine or penalty for a public wrong, but in vindication of a private right which has been willfully invaded; and indeed, it may be said that such damages in a measure compensate or satisfy for the willfulness with which the private right was invaded, but, in addition thereto, operating as a deterring punishment to the wrongdoer, and as a warning to others.... Punitive damages have now come, however, to be generally, though not universally, regarded, not only as punishment for wrong, but as vindication of private right. This is the basis upon which they are now placed in this state.

*Id.* (quoting *Rogers v. Florence Printing Co.*, 233 S.C. 567, 573, 106 S.E.2d 258, 261 (1958)).

Thus, contrary to State Farm's assertion, the policy reasons supporting an award of punitive damages are more than to punish the defendant and to deter the defendant and others from similar conduct. Punitive damages historically have also

served the purpose of vindicating the private rights of the plaintiff.

Moreover, we hold that punitive damage awards, even though not paid directly by the tortfeasor because of the covenant, continue to serve several public policy aims; specifically, deterring similar conduct by the tortfeasor and others, as well as vindicating the private rights of the injured plaintiff. These purposes are fulfilled even if a specific defendant is not financially punished by imposition of an award.

Today, State Farm advances an argument that State Farm and other insurers have unsuccessfully argued in courts across the country in an effort to avoid their contractual duty to their insured. In *Lavender v. State Farm Mutual Automobile Insurance Co.*, 828 F.2d 1517 (11th Cir.1987), the United States Court of Appeals, Eleventh Circuit, rejected as "disingenuous" an argument from State Farm that it should not be liable for punitive damages since they were only available to punish a wrongdoer and it had done no wrong:

> State Farm's argument that it should not be liable for punitive damages in this case because the purpose of awarding punitive damages is to punish a wrongdoer, and State Farm has done no wrong, is disingenuous. State Farm readily admits that as a liability carrier, it would be liable for punitive damages against its insured even though the insurance company itself would have done no wrong.

*Id.* at 1518.

In *Omni Insurance Co. v. Foreman*, 802 So.2d 195 (Ala. 2001), the Supreme Court of Alabama affirmed the trial judge's ruling rejecting the UIM carrier's request for judgment as a matter of law on the claim for punitive damages on the basis they would not serve the purposes for which punitive damages are allowed. *Id.* at 198–200. The UIM carrier had argued that, since the insured had already settled with the tortfeasor, the verdict would punish only the insured's own carrier, not the tortfeasor. *Id.* at 196.

The court noted that, on appeal, the UIM carrier "makes challenging public-policy arguments" regarding allowing punitive damages to be awarded against a UIM carrier that has done no wrong. *Id.* at 198. However, citing *Lavender*, 828 F.2d 1517, the court stated that "[t]he United States Court of

Appeals for the Eleventh Circuit has previously addressed this very question and concluded that Alabama's UIM statute permits the recovery of punitive damages." *Id.* at 199. The court held the language in the statute providing UIM coverage for damages which the injured person is "legally entitled to recover" was plain and unambiguous, and it did not exclude punitive damages. *Id.* at 198. Thus, the fact that the award was not paid directly by the tortfeasor did not defeat the injured plaintiff's right to obtain UIM coverage.

In *Stinbrink v. Farmers Insurance Co.*, 111 N.M. 179, 803 P.2d 664 (1990), a case involving uninsured motorist (UM) coverage, the Supreme Court of New Mexico held that the exclusion of coverage for punitive damages in a UM policy was void as against public policy. The court reasoned punitive damages are included in the meaning of the state statute governing UM coverage, which provided the insured could recover all sums the insured was "legally entitled to recover" from the tortfeasor. *Id.* at 665–66. The court stated the legislative purpose behind enacting compulsory UM coverage is to protect an insured against the financially unresponsive motorist, not to protect the insurance company, and the only condition to protection under the provision is that the injured person must be entitled to recover damages against the uninsured motorist. *Id.* at 665. The court concluded that such benefits could not be "contracted away" and a policy provision contrary to state law was void. *Id.* at 665–66.

In the current matter, State Farm has asked the federal court to bar Plaintiffs from pursuing the claim for punitive damages in the tort case now pending. Our legislature has defined damages in the insurance context to include both actual and punitive damages, and to deny an injured party the benefit of the party's own UIM coverage would itself violate public policy because it would abrogate the purpose surrounding UIM coverage, which is to benefit the insured party, and would also thwart the other purposes for imposing punitive damages beyond imposing a financial penalty on the tortfeasor; namely, deterrence and vindication of the private rights of the injured plaintiff. *Cf. State Farm Mut. Auto. Ins. Co. v. Lawrence*, 26 P.3d 1074 (Alaska 2001) (stating the purpose of the UIM statute is to provide *for* the insured, as an injured claimant, the same benefit level as that provided *by* the

insured to those asserting claims against the insured and holding that, where an insured's liability policy provides coverage for punitive damages, the insured's UIM policy must mirror that and also cover the insured for the punitive damages that they are legally entitled to collect from an underinsured tortfeasor).[3]

The central purpose of UIM coverage is to protect the injured party, and vindication of the injured party's private rights is an integral part of that purpose, above and beyond the punishment of a specific individual. *See Floyd v. Nationwide Mut. Ins. Co.,* 367 S.C. 253, 260, 626 S.E.2d 6, 10 (2005) ("The central purpose of the UIM statute is to provide coverage when the injured party's damages exceed the liability limits of the at-fault motorist.").

Under South Carolina law, carriers must offer UIM coverage up to the limits of the insured's liability coverage. Plaintiffs accepted this offer and paid the corresponding premiums for coverage and are entitled to this contractual benefit. State Farm set its premiums with the knowledge that they are liable for compensatory and punitive damages under the insurance contract, and it cannot now be heard to complain that the delivery of benefits under the contract would thwart public policy.[4]

## IV. CONCLUSION

We answer the certified question in the negative and conclude that it does not violate South Carolina's public policy

---

3. There is no practical difference between the current case and a situation where there is no covenant, but the defendant does not have the financial resources to respond to a claim for damages beyond the limits of any liability insurance coverage that has already been tendered on the defendant's behalf. In either scenario, the defendant is essentially judgment-proof, and the UIM carrier would be responsible for responding to any deficit, up to the UIM policy limits.

4. We also reject the argument that State Farm would be disadvantaged here if it is unable to obtain the cooperation of, or the control of, the defendants because they have settled. The failure of a defendant to cooperate with an insurer would not relieve the insurer of the contractual obligation to pay a claim. *See generally Cowan v. Allstate Ins. Co.,* 357 S.C. 625, 594 S.E.2d 275 (2004) (holding a party's noncooperation does not relieve the insurer of the obligation to pay an innocent third party).

to allow a plaintiff to seek punitive damages after signing a covenant not to execute against the personal assets of an at-fault defendant.

**CERTIFIED QUESTION ANSWERED.**

TOAL, C.J., PLEICONES and HEARN, JJ., concur.

KITTREDGE, J., dissenting in a separate opinion.

Justice KITTREDGE.

Plaintiffs argue "the [certified] question may not be ripe for an answer." In this regard, Plaintiffs reference the premature nature of the question before this Court and conclude: "until there is a jury verdict that returns punitive damages, and the aggregate of punitive damages and actual damages exceeds $100,000, State Farm's exposure in this case is unsettled and premature." I agree. *See Sloan v. Friends of Hunley, Inc.,* 369 S.C. 20, 25, 630 S.E.2d 474, 477 (2006) ("Generally, this Court only considers cases presenting a justiciable controversy. A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.") (citations omitted); *Concerned Dunes West Residents, Inc. v. Georgia–Pacific Corp.,* 349 S.C. 251, 261, 562 S.E.2d 633, 639 (2002) (declining to answer certified questions where questions "assume a dispute which may never arise" because this Court will not issue advisory opinions).

I vote to rescind our agreement to answer the certified question. Rule 244(e), SCACR.