742 S.E.2d 644

Don D. GAUSE, Respondent,

v.

Nathan Dale SMITHERS and Edward W. Hunt, Defendants,

of whom Edward W. Hunt is the Appellant.

Appellate Case No. 2011–183646.

No. 27261.

Supreme Court of South Carolina.

Heard Dec. 5, 2012.
Decided June 5, 2013.

144

---

Linda Weeks Gangi, of Thompson & Henry, PA, of Conway, for Appellant.

John S. Nichols, of Bluestein, Nichols, Thompson, & Delgado, LLC, of Columbia, and David Eliot Rothstein, of Rothstein Law Firm, P.A., of Greenville, for Respondent.

Justice HEARN.

Edward William Hunt (Father) appeals a jury verdict in favor of Don Gause finding him liable under the family purpose doctrine for damages caused by the negligence of Edward Raymond Hunt (Son). Father argues he cannot be found liable under the family purpose doctrine; Son's actions were not a proximate cause of Gause's injuries; he should be granted a new trial due to prejudicial statements and a defective verdict form; and the punitive damages award should be overturned as impermissible under the family purpose doctrine. We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

Gause, a police officer for the City of Conway, was on duty when he responded to a call from a highway patrolman who had pulled over a Firebird driven by Son on suspicion of drunk driving. Instead of pulling off the highway into the emergency lane, Son stopped in the left lane of traffic on the four lane highway, and the patrolman stopped behind him with his lights flashing. When Gause arrived, he parked behind the patrolman, who subsequently left the scene, and also activated his blue lights. A second policeman also responded and eventually took Son into custody, leaving only Gause and the abandoned vehicle. Gause was filling out paperwork in his

car and waiting for the tow truck to move the Firebird when a pickup truck driven by Nathan Smithers rear-ended him, propelling his cruiser into the Firebird.

Gause sued Smithers and Father—assuming he was the driver of the Firebird because it was registered in his name—for his injuries. Father moved to dismiss on the basis that Son, and not he, had been driving the Firebird that night. Realizing the mistake, Gause filed an amended complaint substituting Son as the defendant for the negligence claim and changing the claims against Father to negligent entrustment and liability under the family purpose doctrine. Son moved to be dismissed as a party because the amendment occurred after the statute of limitations had run, and the circuit court granted the motion, holding the amended complaint did not relate back under Rule 15(c), SCRCP. Gause appealed the grant of Son's motion to be dismissed, and the court of appeals affirmed in *Gause v. Smithers*, 384 S.C. 130, 681 S.E.2d 607 (Ct.App.2009).

Father then moved for summary judgment on the grounds the case could not proceed under the theory of the family purpose doctrine because Son had been dismissed and additionally, Son did not proximately cause Gause's injuries. The circuit court denied the motion and the case proceeded to a jury trial on the issue of Father's liability under the family purpose doctrine.[1]

At trial, Father acknowledged he owned the Firebird at the time of the accident, but testified he had transferred title to Son shortly before trial. He noted that prior to the accident he had performed some maintenance on the car, but stated that Son took over most of the maintenance after Father decided to sell it to him. According to Father, Son made a payment of $200 prior to the accident, but Father used that money to bail Son out of jail after the wreck. He testified Son lived with him, although he clarified that Son actually resided in a "broken-down motor home" next to his house, with electricity provided by an extension cord running from Father's house.

---

1. Gause apparently abandoned the issue of negligent entrustment at summary judgment.

Son testified that at the time of the accident he was twenty-five and lived with his parents. He could not remember whether he was employed then. He stated on the night of the accident he patronized a strip club in Myrtle Beach for four hours and then slept in his car for about an hour before attempting to drive home. He testified he was pulled over because the patrolman observed him weaving between the lanes, and he was taken to the detention center after he was stopped. Son further acknowledged he should have pulled off the road and was not sure why he stopped his car in a lane of travel.

Over Father's objections, the court submitted the issue of Father's liability under the family purpose doctrine to the jury. During deliberations, the jury asked the circuit court to clarify the identity of the defendants in the case, and the court brought the jury back in and stated that the father was the defendant, not the son. The jury returned a verdict for Gause, awarding actual damages of $155,432.64 and punitive damages of $60,000 against Smithers and $40,000 against Father. However, when the verdict was read, the parties realized that Son had been listed as a defendant in the caption. The court then sought to have the jurors consider a corrected verdict form, but the bailiff had already dismissed them and the court was unable to call them all back. The court, however, refused to grant a new trial, reasoning that the jury had not been confused and that any prior confusion was clarified by its previous instructions. This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err in failing to dismiss the case against Father when Son was no longer a party to the action?

II. Did the circuit court err in failing to direct a verdict in favor of Father?

III. Did the circuit court err in denying Father's motions for a new trial based on the defective verdict form and prejudicial statements made by Gause and his attorney in regards to Son's intoxication at the time of the incident?

IV. Did the circuit court err in allowing punitive damages to be assessed against Father when his liability was predicated on the family purpose doctrine?

## LAW/ANALYSIS

## I. FAILURE TO DISMISS

██ Father argues the circuit court erred in refusing to dismiss the case against him after Son was dismissed from the lawsuit because under the family purpose doctrine, Father's liability was indivisible from Son's. We disagree.

██ The family purpose doctrine, which arises from the law of agency, is derived from the notion that one "who has made it his business to furnish a car for the use of his family is liable as principal or master when such business is being carried out by a family member using the vehicle for its intended purpose, the family member thereby filling the role of agent or servant." *Campbell v. Paschal*, 290 S.C. 1, 8, 347 S.E.2d 892, 897 (Ct.App.1986) (internal citation omitted). To impose liability under the family purpose doctrine the plaintiff must prove the defendant is the head of the family and owns, maintains, or furnishes the automobile. *Reid v. Swindler*, 249 S.C. 483, 496, 154 S.E.2d 910, 916 (1967). Whether the family purpose doctrine applies is ordinarily a question of fact for the jury, but where no factual issue is created, the question becomes one of law, properly decided by the circuit court. *Evans v. Stewart*, 370 S.C. 522, 527, 636 S.E.2d 632, 635 (Ct.App.2006).

Father relies on *Jordan v. Payton*, 305 S.C. 537, 409 S.E.2d 793 (Ct.App.1991), for the proposition that his liability is indivisible from Son's liability In *Jordan*, the plaintiff was injured when a minor lost control of his vehicle and struck her house, and she sued the minor and his legal guardian based on the family purpose doctrine. *Id.* at 538, 409 S.E.2d at 793. Neither party filed an answer, and the plaintiff was granted a default judgment against both the minor and the guardian. *Id.* The court of appeals reversed the judgment against the minor pursuant to Rule 55, SCRCP, because a guardian *ad litem* had not been appointed for him. *Id.* The court also reversed the judgment against the legal guardian, noting that

"the liability of [the guardian] depends upon the liability of the child. Therefore, the judgment must be valid against both or it is valid against neither." *Id.* at 539, 409 S.E.2d at 794.

We find this case distinguishable. Although we agree the liability of Father hinges on the liability of Son, here, there has been no previous determination as to Son's liability. In *Jordan,* the court of appeals noted, "Under the express language of [Rule 55, SCRCP], the default judgment entered against the child is void for all purposes, *liability* as well as damages." *Id.* (emphasis added). Thus, by voiding the judgment, there was no longer a judgment that the minor was liable. Because the liability of the guardian rested on the negligence of the minor, there could be no judgment against the guardian if the minor had not been found negligent. Here, however, Son's dismissal from the action was not grounded on a finding of no liability. Son was offered as a witness at trial and the jury was instructed that it had to consider both his personal liability as well as whether Father should be found liable under the family purpose doctrine. Son did not need to be a party to the action to allow the jury to make these determinations. We therefore find Father can be held liable even though Son was dismissed from the action.[2]

Moreover, allowing the case to proceed against Father alone is consistent with the theories of agency from which the family purpose doctrine developed. Under the doctrine of respondeat superior, an injured party can elect to sue both the principal and the agent, but is not required to sue the agent to recover from the principal. *Austin v. Specialty Transp. Servs., Inc.,* 358 S.C. 298, 319, 594 S.E.2d 867, 878 (Ct.App.

---

2. This holding is further supported by case law from other jurisdictions that have considered this issue. *Jordan* cites to *Medlin v. Church,* 157 Ga.App. 876, 278 S.E.2d 747 (1981), which reversed a verdict against a father under the family purpose doctrine because the verdict against his son was void for improper service. However, *Medlin* specifically noted that "Under Georgia law where the head of the family is sought to be held liable for some wrong committed by a member of his family within the scope of the family purpose doctrine, that member of the family need not necessarily be joined as a party defendant." *Id.* at 748 n. 1. Additionally, the United States Court of Appeals for the Sixth Circuit has noted that under Kentucky' application of the family purpose doctrine, the primary tortfeasor doctrine is not an essential party to a lawsuit. *Ray v. Porter,* 464 F.2d 452, 455 (6th Cir.1972).

2004). Furthermore, "[t]he rationale of the family purpose doctrine is that it serves to place financial responsibility upon the head of the family who is more likely to respond in damages when the family vehicle is used negligently by a person without sufficient assets of his own." *Lollar v. Dewitt,* 255 S.C. 452, 456, 179 S.E.2d 607, 608 (1971). Thus, the reason for proceeding under the family purpose doctrine is to allow recovery from the more solvent parent, and requiring that the child be sued as well is unnecessary to accomplish that end.

## II. DIRECTED VERDICT AND JUDGMENT NOT-WITHSTANDING THE VERDICT

Father argues the circuit court erred in refusing to direct a verdict in his favor because the facts did not support application of the family purpose doctrine and Son's actions did not proximately cause Gause's injuries. We disagree.

"A motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict." *Welch v. Epstein,* 342 S.C. 279, 300, 536 S.E.2d 408, 419 (Ct.App.2000). On appeal from a circuit court's denial of a motion for a directed verdict or a JNOV, we apply the same standard as the circuit court by viewing the evidence and all reasonable inferences in the light most favorable to the non-moving party. *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.,* 399 S.C. 322, 331–32, 732 S.E.2d 166, 171 (2012). We will not reverse the circuit court's ruling on a JNOV motion unless there is no evidence to support the ruling or where the ruling is controlled by an error of law. *Law v. S.C. Dept. of Corr.,* 368 S.C. 424, 434–35, 629 S.E.2d 642, 648 (2006).

### A. Applicability of the Family Purpose Doctrine

Father argues the circuit court erred in allowing the jury to consider his liability under the family purpose doctrine because Gause presented no evidence to establish liability under that theory. Examining the evidence in the light most favorable to Gause, we find the court properly submitted the issue to the jury.

Gause presented evidence that Father was the head of the household and owned, maintained, or provided the Firebird for

150

Son's use. At trial, both Father and Son admitted that Son was living with his parents at the time of the accident. Although Son lived in a broken-down motor home adjacent to Father's home, it was on the same property and Son received electricity from Father's home. Father also stated the Firebird was titled in his name, he paid the property taxes on it, he had a set of keys, and he could have taken the car away from Son if he wanted. Additionally, he acknowledged the Firebird was used by Son for his convenience and general use because he and his wife were tired of having to drive Son around. Accordingly, we find sufficient evidence existed to submit this issue to the jury.

## B. Proximate Cause

■ Father additionally alleges the circuit court erred in submitting the issue of his liability to the jury because Son's actions did not proximately cause Gause's injury.

■ "Proximate cause is normally a question of fact for determination by the jury, and may be proved by direct or circumstantial evidence." *Player v. Thompson*, 259 S.C. 600, 606, 193 S.E.2d 531, 533 (1972). The touchstone of proximate cause is foreseeability which is determined by looking to the natural and probable consequences of the defendant's conduct. *J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 369, 635 S.E.2d 97, 101 (2006). Plaintiff need not prove the defendant's negligence was the sole proximate cause of the injury. *Id.* "To exculpate a negligent defendant, the intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged." *Matthews v. Porter*, 239 S.C. 620, 628, 124 S.E.2d 321, 325 (1962). "Only in rare or exceptional cases may the issue of proximate cause be decided as a matter of law." *Bailey v. Segars*, 346 S.C. 359, 367, 550 S.E.2d 910, 914 (Ct.App.2001).

Son negligently stopped his vehicle in the left lane of traffic instead of pulling off the road into the emergency lane. "The danger of leaving a vehicle standing on the traveled portion of a highway is well known." *Jeffers v. Hardeman*, 231 S.C. 578, 583, 99 S.E.2d 402, 404 (1957). It was reasonably foreseeable that by remaining in a lane of traffic, another car could crash into the back of the police cruiser that pulled him over. We

therefore disagree with Son that Smithers' actions broke the chain of causation and find sufficient evidence was presented for a jury to conclude Son's negligence was a proximate cause of Gause's injuries.

## III. MOTIONS FOR A NEW TRIAL

Father contends the circuit court erred in refusing to grant his motions for a new trial based on the defective verdict form and on prejudicial statements made in regards to Son's intoxication at the time of the incident.

### A. Verdict Form

■■ Father argues the circuit court erred in not granting a new trial because the verdict form was unclear as to who was the actual defendant in the case. We find this issue is not preserved. Father contends the verdict form was ambiguous because it allowed the jury to find "against Defendant Hunt," but erroneously included Son's name as well as Father within the caption. However, Father did not object to the caption form until after the verdict had been read. *See Johnson*, 317 S.C. at 421, 453 S.E.2d at 912 (holding that by failing to object to a verdict form until after the verdict had been reached, a party failed to preserve any issue relating to the verdict form).

### B. Admission of Improper Testimony

■■ Father additionally argues the circuit court erred in failing to grant a new trial based on references to Son's drinking after the circuit court had ruled that evidence of Son's intoxication was inadmissible. However, Father did not move for a mistrial, nor did he object to the curative instructions given to the jury after his objections, and he is therefore precluded from making those arguments before this Court. Accordingly, this issue also is not preserved. *See Elam v. S.C. Dept. of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 780 (2004) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

## IV. PUNITIVE DAMAGES

 Father finally argues the circuit court erred in allowing punitive damages to be assessed against him under the family purpose doctrine. We agree.

This is a question of first impression in this State. Only a limited number of jurisdictions have adopted the family purpose doctrine.[3] *See Jacobson v. Superior Court,* 154 Ariz. 430, 743 P.2d 410, 414 n. 1 (Ct.App.1987) (noting that only Arizona, Colorado, Connecticut, Georgia, Kentucky, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, South Carolina, Tennessee, Washington, and West Virginia have adopted the family purpose doctrine). Of those states, only two have addressed whether punitive damages should be allowed and both have answered that question in the negative.

In *Byrne v. Bordeaux,* 85 N.C.App. 262, 354 S.E.2d 277 (1987), the North Carolina Court of Appeals concluded without much discussion that punitive damages should not be allowed in this context by noting simply that although the family purpose doctrine may be well established within that state, it is not without its limits. *Id.* at 279. In acknowledging the boundaries of the doctrine, it cited to *Grindstaff v. Watts,* 254 N.C. 568, 119 S.E.2d 784 (1961), where the court had previously discussed the doctrine's tenuous validity by stating, "The doctrine undoubtedly involves a novel application of the rule of respondeat superior and may, perhaps, be regarded as straining that rule unduly. It is a deviation from the ordinary principles of respondeat superior and has been severely criti-

---

3. Although the family purpose remains viable in this State and its validity has not been challenged here, we recognize it has been widely criticized as an outmoded judicial construct. *See* F.P. Hubbard & R.L. Felix, The South Carolina Law of Torts 747 (4th ed.2011) ("Most jurisdictions have rejected the family purpose doctrine largely on the grounds that it is a fiction developed to address motor vehicle accidents and that it is not necessary with insurance generally available under today's owner consent statutes."); R.E. Barber, Comment note, Modern Status of Family Purpose Doctrine with Respect to Motor Vehicles, 8 A.L.R.3d 1191 (1966) (noting that courts rejecting the theory have both attacked its theoretical basis in the law of agency and considered that any policy justifications for it could be better satisfied in some other manner, such as legislation); *see also* 6 Blashfield Automobile Law & Practice § 257 (4th ed.2011) ("At best, the family purpose doctrine is an anomaly in the law.").

cized in some quarters." *Id.* at 787 (internal citations omitted).

■ The Court of Appeals of Arizona offered a more detailed analysis regarding its rejection of punitive damages under the doctrine in *Jacobsen*. It noted that although the family purpose doctrine "reli[ed] on agency principles for its credibility, its social usefulness is its primary justification." *Jacobson*, 743 P.2d at 411. Additionally, it acknowledged that in Arizona the concept of punitive damages was based on a finding that the wrongful acts were "guided by evil motives" and was designed to punish the wrongdoer as well as deter him and others from similar conduct. *Id.* at 411–12. Although Arizona allows punitive damages against a principal for the torts of an agent, the court reasoned the factual distinctions between agency and the family purpose doctrine militated against allowing punitive damages in cases based on the family purpose doctrine. *Id.* at 412. A principal derives economic benefits from the acts of the agent and has more leeway in defining the bounds of employment than a head of household may have when merely providing a vehicle for the convenience of the family. *Id.* Because punitive damages are designed to punish the actual tortfeasor, any imputation to another party should be limited. *Id.* Thus, the court concluded that allowing punitive damages under the family purpose doctrine did not serve the objective of punishing the wrongdoer and it found no reason to make an exception simply because the doctrine is nominally based on agency. *Id.* at 413.

■ We agree with these courts' reasoning that the family purpose doctrine's reliance on agency principles is somewhat of a legal fiction which cannot logically be extended to allow recovery of punitive damages. The parallel between a parental relationship and an employment relationship can only be stretched so far. A principal can dictate the parameters of the use of a vehicle more narrowly than a parent who merely allows his child to use a car for the convenience of the family. Moreover, because a principal stands to gain financially from the actions of an agent, it makes more sense to allow additional monetary damages in the form of punitive damages against a principal.

Gause also argues that punitive damages should be allowed because they serve to vindicate the private rights of the injured party and are not solely for punishment of the tortfeasor, citing to our recent decision in *O'Neill v. Smith*, 388 S.C. 246, 695 S.E.2d 531 (2010). We agree that punitive damages serve multiple purposes; however, we find *O'Neill* distinguishable. In that case, we answered a specific certified question regarding whether plaintiffs could pursue punitive damages against their own underinsured motorist insurance company where they had signed a covenant not to execute after settling with defendant's liability company. *Id.* at 248, 695 S.E.2d at 532. There, the insurance company was attempting to escape liability and avoid vindicating the rights of its own insured. We view that situation as being decidedly different than a parent providing a vehicle to a grown but dependent child to drive. The family purpose doctrine itself is a mechanism to allow the vindication of the rights of an injured party by imputing liability onto the likely more solvent parents. However, we decline to be the first state to expand that doctrine to encompass an award of punitive damages against the parent.

## CONCLUSION

Based on the foregoing, we reverse the award of punitive damages and affirm the circuit court on the remaining issues.

PLEICONES and BEATTY, JJ., concur.

TOAL, C.J., and KITTREDGE, J., dissenting in separate opinions.

Chief Justice TOAL:

I respectfully dissent. I would find that the facts of the instant case do not support application of the family purpose doctrine, and would reverse.

## LAW/ANALYSIS

### I. The Family Purpose Doctrine

In my opinion, a brief review of this Court's family purpose doctrine jurisprudence demonstrates the doctrine's inapplicability to this case.

The introduction of the motor vehicle, and inevitable accidents that followed, required the creation of new principles of law. *See* William W. Wilkins, Jr., *The Family Purpose Doctrine*, 18 S.C.L. Rev. 638, 638 (1966). One such creation, the family purpose doctrine, involved the stretching of agency principles to fix liability against the purchaser and title holder of a vehicle obtained for the use and pleasure of his family for negligent acts committed by members of the family while using the vehicle for general family purposes. *Id.* at 639.

In *Davis v. Littlefield*, 97 S.C. 171, 81 S.E. 487 (1914), this Court adopted the family purpose doctrine. That case provides a clear illustration of the doctrine's application. In that case, the defendant, A.S. Littlefield (A.S.), rented a house in Aiken and established his family home there. *Id.* at 171, 81 S.E. at 487. However, A.S. spent most of his time in Chicago, while his wife and son, Randolph Littlefield (Randolph), resided in Aiken. *Id.* at 171–72, 81 S.E. at 487. A.S. provided a vehicle, "for the health and pleasure," of his family. *Id.* at 172, 81 S.E. at 487.

On February 13, 1912, while A.S. was in Chicago, Randolph took the vehicle to visit friends at an Aiken hotel. *Id.* His mother did not accompany him. During the trip, Randolph encountered Alonzo Davis who was driving a pair of mules. *Id.* It is unclear what happened when Randolph and Davis came upon each other, but as a result, Davis's mules ran away. *Id.* Davis was thrown from his mules and alleged injury. *Id.* Davis brought suit against A.S. and Randolph, claiming that Randolph occupied the position of servant to his father in operating the vehicle, and that both men should be held responsible. *Id.*

This Court viewed the underlying "purpose" for owning the car as essential:

> The sole purpose of having the car was for the pleasure of the family. The family, for whose use the car was sent, consisted of Mrs. Littlefield and three sons, two of whom were college students and only in Aiken for a short time. The principal use, therefore, was for the wife and this son Randolph, who drove the car on the day of the accident. The wife was not in good health and used the car but little,

and then Randolph drove. The family use, therefore, consisted mainly in Randolph's use.

*Id.* at 176, 81 S.E. at 488. The Court held that Randolph operated the vehicle in furtherance of his father's sole purpose in providing the vehicle, and therefore, A.S. could be held responsible for the acts of his "servant:"

> The general proposition that a servant, in the transaction of his master's business, shall have no purpose of his own is nowhere maintained. When a master sends his servant to town on the master's business, we know of no court that has held that, if the servant is induced to go mainly because he wants to make purchases for himself, the private purpose of the servant will relieve the master from liability for the negligence of his servant in the conduct of the master's business. The parent is not liable for the negligence of the child by reason of the relation of parent and child, yet if the child is the agent of the father, then the existence of the relation of parent and child does not destroy the liability of the principal for the acts of the agent.

*Id.* at 177, 81 S.E. at 488; *see also Mooney v. Gilreath*, 124 S.C. 1, 7, 117 S.E. 186, 188 (1923) ("But, whether the defendant was sole or part owner of the car, we think the evidence was reasonably susceptible of the inference that it had been acquired and was kept and used by the defendant for a purpose that he had as much right to make his business as he had to run a jitney line—the convenience and pleasure of his family, of which his minor son . . . was a member.").

In *Porter v. Hardee*, 241 S.C. 474, 129 S.E.2d 131 (1963), the defendant, Leon Hardee, Sr. (Leon Sr.), appealed from a judgment finding him liable for personal injuries sustained by the plaintiff when her vehicle collided with an automobile registered to Hardee, but driven by his minor son, Leon Hardee Jr. (Leon Jr.).

Leon Jr. testified at trial that he lived with his father and that Leon Jr. purchased the automobile two weeks prior to the accident. *Id.* at 476, 129 S.E.2d at 131–32. According to Leon Jr., he placed title in his father's name because of his status as a minor. *Id.* at 476, 129 S.E.2d at 132. Leon Jr. testified that his father maintained an automobile used by the family, but that Leon Jr. had exclusive use of the vehicle

involved in the accident. *Id.* at 476–77, 129 S.E.2d at 132 ("The testimony for the plaintiff, which was corroborated by that of the defendant, therefore, shows that ... the automobile in question was not provided, maintained, or used by the defendant for general family purposes."). This Court held that liability could not be imposed upon Leon Sr. in the absence of evidence that he maintained or furnished the vehicle for his family's use:

> A necessary requisite to the imposition of liability under the family purpose doctrine, therefore, is that the head of the family own, maintain, or furnish the automobile and, where the head of the family does not own, maintain, or furnish the automobile for general family use, he is not liable.

*Id.* at 477, 129 S.E.2d at 132 (citing 60 C.J.S. *Motor Vehicles* § 433). This Court rejected the plaintiff's argument that because the car was registered in Leon Sr.'s name, and that his son resided in the home, a presumption arose that the son was Leon Sr.'s agent at the time of the collision, relying in part on *Mooney v. Gilreath, supra:*

> The facts of the foregoing cases clearly distinguish them from the present case.... [A]ny presumption that may have arisen from the proof of the foregoing facts was clearly rebutted by the uncontradicted testimony of the witness for the plaintiff, by which she was bound, that the car was in fact owned by son and was not maintained or furnished by the defendant for general family use.

*Id.* at 477–78, 129 S.E.2d at 132 (remanding for entry of judgment in favor of the defendant); *see also Lollar v. Dewitt,* 255 S.C. 452, 456, 179 S.E.2d 607, 608 (1971) ("The family purpose doctrine has been adopted in this state. Basically, under this doctrine, where the head of the family owns, furnishes and maintains a vehicle for the *general use, pleasure and convenience of the family,* he is liable for the negligence of a member of the family having general authority to drive it while the vehicle is being so used." (emphasis added) (citations omitted)); *but see Lucht v. Youngblood,* 266 S.C. 127, 133, 221 S.E.2d 854, 857 (1976) (affirming the trial court's application of the family purpose doctrine, and stating, "Further, the testimony is uncontradicted that the boy was seventeen years old and a student living at home with his parents. The father agreed he bought the car for the use of his son, and that it was

used practically exclusively by the son except on occasions when the father drove the car.").

This Court's decisions analyzing the family purpose doctrine provide three general requirements for its application: (1) the automobile must have been maintained by the owner for the pleasure and use of her family at the time of the accident; (2) the vehicle in question must have been used by a member of the owner's family at the time of the accident; and (3) the vehicle must have been used with the permission, either express or implied, of the owner, at the time of the accident. *See* Wilkins, 18 S.C.L. Rev. at 641. ("When these three requirements have been met, the doctrine can be imposed. Liability is founded on the use of the vehicle for the purpose for which it was provided and not the existence of the family relationship.").

In my view, an important, and pertinent, aspect of the doctrine is its indivisibility. Basically, general agency principles allow a plaintiff to pursue recovery against the principal or agent, and under the family purpose doctrine, the principal's liability is directly premised on the agent's liability.

In *Player v. Thompson*, 259 S.C. 600, 193 S.E.2d 531 (1972), minor Diane Player was injured in a one-car automobile collision with a mailbox and fence while a guest passenger in an automobile driven by Nancy Carder, a minor, and owned by Bobby and Geraldine Thompson (collectively, the Thompsons). The *guardian ad litem* (GAL), on Player's behalf, sued Carder for damages, alleging Carder operated the vehicle recklessly. *Id.* at 604, 193 S.E.2d at 533. Player also sought to hold the Thompsons liable under the family purpose doctrine. *Id.* at 604–05, 193 S.E.2d at 533.

At the conclusion of Player's case, the trial court held that Carder did not operate the vehicle recklessly or heedlessly, and that her conduct was not the proximate cause of the injuries sustained. *Id.* at 605, 193 S.E.2d at 533. The trial court granted Carder and the Thompsons' motions for nonsuit, holding that the Thompsons "could not be held liable unless the driver Carder could be held liable." *Id.* at 610, 193 S.E.2d at 536. This Court reversed the trial court's decision regarding Carder's recklessness, but agreed that the Thompsons' liability was premised on Carder's liability:

The trial judge granted the motion for a nonsuit as to [the Thompsons] because they could not be held liable unless the driver Carder could be held liable. He did not grant the motion on the ground that the family purpose doctrine was not applicable.... Inasmuch as the motion should not have been granted as to Carder, the motion should not have been granted as to [the Thompsons]. We do not mean to intimate that the motion for a nonsuit as to [the Thompsons] should not have been granted on the theory of the family purpose doctrine.... On a new trial, after the plaintiff's testimony has been submitted, [the Thompsons] may renew their motion, inasmuch as the same was not ruled upon in the first trial.

*Id.* at 610–11, 193 S.E.2d at 536 (alterations added).

In *Jordan v. Payton*, 305 S.C. 537, 409 S.E.2d 793 (Ct.App. 1991), the respondent sued the appellant, a minor child, alleging that the child lost control of his vehicle and struck respondent's house. The respondent joined the appellant's legal guardian as a defendant, alleging that the guardian provided the appellant with the vehicle "for family purposes." *Id.* at 538, 409 S.E.2d at 793. Neither the appellant nor the guardian answered. *Id.* The circuit court found them in default and referred the case to a master-in-equity for a damages hearing. *Id.* The Master granted the respondent a default judgment which the respondent and the guardian moved to set aside. *Id.* The Master denied their motion, and they appealed. *Id.*

The court of appeals reversed on two grounds. First, the minor was not represented by a GAL in the action. *Id.* Rule 55 of the South Carolina Rules of Civil Procedure provides that "[N]o judgment by default shall be entered against a minor ... unless represented in the action by a [GAL] who has appeared therein." *Id.* at 538, 409 S.E.2d at 793–94 (citing Rule 55, SCRCP). Therefore, the court of appeals voided the default judgment. *Id.* at 538–39, 409 S.E.2d at 794. Second, the court held if the child could not be held liable, neither could the guardian, and provided a perceptive summary of the law on this point:

The judgment must also be set aside as to [the guardian]. Her alleged liability is based on the family purpose doctrine.

As we have said, no independent basis for her liability is alleged. "The doctrine is based on the theory that one 'who has made it his business to furnish a car for the use of his family is liable as principal or master when such business is being carried out by a family member using the vehicle for its intended purpose.'" Quite obviously, the liability of [the guardian] depends upon the liability of the child. Therefore, the judgment must be valid against both or it is valid against neither.

*Id.* at 539, 409 S.E.2d at 794 (citation omitted); *see also Unisun Ins. v. Hawkins*, 342 S.C. 537, 543–44, 537 S.E.2d 559, 562–63 (Ct.App.2000), *cert. dismissed*, 350 S.C. 6, 564 S.E.2d 676 (2002) ("The court ... held that even had Unisun properly pled a cause of action under [the family purpose doctrine] Unisun's recovery was barred because the Hawkinses' liability was derivative of Bruce's. Thus, the trial court reasoned, if the statute of limitations ran against Bruce, it necessarily ran against the Hawkinses'. Unisun, however, failed to appeal the underlying ruling.... Hence, it is the law of the case." (alterations added)).

In my view, the foregoing cases, when taken together, stand for the proposition that liability under the family purpose doctrine is indivisible. This does not mean that a plaintiff must pursue a claim against both the principal and the agent. However, in my opinion, this does mean that a plaintiff may not pursue a claim against the principal when an action for liability against the servant cannot be maintained either due to substance or procedure.

## II. Failure to dismiss

From my perspective, the trial court erred in failing to dismiss the action as a result of Son's removal as a defendant.

On November 2, 2006, Gause sued Smithers, the driver of the vehicle that rear-ended him, and Father. Gause alleged that Father acted negligently on the night of the accident, and that Father's actions were the proximate cause of Gause's injuries. On December 4, 2006, Father submitted an Answer denying Gause's allegations, and moved for a dismissal. Father admitted that he owned the vehicle, but asserted that Son drove the vehicle on the night in question. Gause amended his complaint to include Son. Father and Son moved to dismiss

based on Gause's failure to commence the action against them within the applicable statute of limitations. The court granted the motion as to Son only, and denied Gause's motion for reconsideration. The trial proceeded against Father, and at the close of all evidence, Father's counsel moved for nonsuit:

> Your Honor, we would also move that your Honor dismiss the case as an involuntary nonsuit issue based on the fact that the parent child family purpose doctrine is an indivisible situation. You can't have family purpose liability without the child involved who was alleged to be the wrongdoer and we, we rely on the case of *Payton v. Jordan.*

Gause's counsel responded,

> Also subsequent to that [a] case came out in South Carolina ... that says when you have vicarious liability you don't have to sue the agent. You can sue the principal for the acts of the agent and so we believe that law is controlling.

The trial court denied the motion. In my opinion, this was error. Gause's counsel is correct that under the theory of vicarious liability a plaintiff may sue either the principal or the agent. However, an important nuance to this standard is that the principal cannot be held liable for acts committed by the agent if the agent is not himself liable for those acts. *See Johnson v. Atlantic Coast Line R. Co.,* 142 S.C. 125, 133, 140 S.E. 443, 445 (1927) ("When the master and the servant are sued together for the same act of negligence or willful tort, and the master's liability rests solely upon the servant's conduct, a verdict against the master alone is illogical and cannot stand."). This notion is particularly valid under our family purpose doctrine jurisprudence described *supra. See Player,* 259 S.C. at 610–11, 193 S.E.2d at 536; *Unisun,* 342 S.C. at 543–44, 537 S.E.2d at 562–63.

The majority distinguishes the instant case from *Jordan v. Payton, supra,* because, "Son's dismissal from the action was not grounded on a finding of no liability." Respectfully, in my opinion, this is no distinction at all. In *Jordan,* the court did not base the dismissal of the default judgment against the child on a finding of "no liability," but instead of the procedural commands of Rule 55, SCRCP. This is analogous to a dismissal pursuant to an applicable statute of limitations, as in the instant case, or failure to perfect service of process. *See*

*Medlin v. Church,* 157 Ga.App. 876, 278 S.E.2d 747, 750 (1981) ("Since service was not perfected upon appellant's son according to statute, the judgment entered jointly against both appellant and his son must be reversed as to the son. Being indivisible under these circumstances, the judgment must also be reversed as to appellant.").

In my opinion, Son's inclusion as a witness compounds the error in this case, and sets a dangerous precedent for future bootstrapping by plaintiffs. Simply put, if a plaintiff is foreclosed from establishing liability against the agent, she may simply sue the principal and call the agent as a witness. This testimony alone, though not serving as the basis for the jury's verdict, may then be used to place liability on the principal. To the extent the family purpose doctrine is an extension of traditional agency principles, the facts of the instant case, and the majority's resulting formulation, represent a bridge too far.

In my view, this trial should not have proceeded following Son's removal from the action, and the trial court's attempt to engineer a bypass around this fact does not cure the error. I would hold that the trial court erred in failing to dismiss the action against Father.

### III. Directed Verdict

The majority concludes that Gause presented sufficient evidence of Father's liability under the family purpose doctrine. I disagree.

### A. Applicability of Family Purpose Doctrine

According to the majority, Father admitted Son lived in a motor home adjacent to Father's home at the time of the accident, and received electricity for that motor home from Father's home. Additionally, Father admitted he held title to the Firebird, that he could have taken the car away from Son if he wanted, and that Son used the Firebird because Father and Father's wife were tired of having to drive Son around. In my opinion, this is a rather broad summary of Father's testimony.

My review of the Record shows that Father also testified at trial that he purchased the Firebird in 1992, and that original-

ly Father and his wife used the vehicle. In 2003, Father allowed Son to use the car to drive to work, and as plaintiff's counsel pointed out, Father permitted Son to use the car "for that purpose, because ... [Father] and his wife had been taking care of that purpose until that time." Father originally intended to maintain the car in good condition so that it could eventually be classified as an antique. However, Father agreed to sell the Firebird to his son, although he retained title in his name and a set of keys. Prior to the accident, Son paid $200 towards the purchase. Father testified that Son completed all maintenance on the Firebird, and that the Firebird was not for the general use of the family, but instead was for Son's exclusive use.

Son testified that on the night of the accident he visited an adult entertainment establishment and departed the establishment sometime between approximately 3:00 and 5:00 a.m. Son slept in his car and then began the drive home. He was later stopped by police.

In my opinion, these facts do not place this case within the ambit of the family purpose doctrine. Father did not maintain or provide the Firebird for the use of the family, but agreed to sell the vehicle to Son for his exclusive use. Father then agreed to sell the vehicle to Son prior to the accident. Our precedent has restricted application of the family purpose doctrine to those circumstances where the vehicle is generally for a family's common use. *See Davis*, 97 S.C. at 176, 81 S.E. at 487 (noting that the father provided the vehicle for the "health and pleasure," of his family); *Porter v. Hardee*, 241 S.C. at 477, 129 S.E.2d at 132 (denying liability under the family purpose doctrine where the plaintiff could not establish that defendant provided the vehicle for "general family purposes"); *Lollar*, 255 S.C. at 456, 179 S.E.2d at 608 ("Basically, under this doctrine, where the head of the family, owns, furnishes, and maintains a vehicle for the *general use, pleasure, and convenience* of the family, he is liable for the negligence of a member of the family having general authority to drive it." (emphasis added)).

Moreover, the Son's stated purpose at the time of his arrest was to return home from visiting an adult entertainment establishment. There is no evidence in the Record that the

Father authorized this type of trip as part of any general family purpose. To the contrary, the only explicit family purpose identified at trial was for Son's travel to and from his place of employment. *See, e.g., Player,* 259 S.C. at 605, 193 S.E.2d at 533 ("Defendant ... furnished an automobile for family purposes to his then-estranged wife, Geraldine Thompson. At the time of the collision, Nancy Carder was staying at the home of Geraldine Thompson. Mrs. Thompson requested that Nancy Carder go to the store for her and entrusted her with the automobile.")

The family purpose doctrine's rationale demands restrictive application. The intent of the doctrine is to fix liability on the owner of a vehicle provided for family use when a member of the family operates the vehicle in a negligent manner and injures a third party. The doctrine is not intended to facilitate judicial intrusion into familial affairs and the personal decisions families make regarding vehicle ownership and other business matters. The majority's analysis allows liability in a more expansive range of circumstances than originally supported by the doctrine, or established in this Court's precedent.

Therefore, from my perspective, the family purpose doctrine is inapplicable to the instant case, and the trial court erred in refusing to direct a verdict in Father's favor.

### B. Proximate Cause

In the majority's view, Son's actions were the proximate cause of Gause's injury. According to the majority, "it is reasonably foreseeable that by remaining in a lane of traffic, another car could crash into the back of the police cruiser that had pulled him over." However, this addresses only part of the proximate cause analysis. In my opinion, Smithers's negligent actions were not reasonably foreseeable given the circumstances. However, even if those actions were reasonably foreseeable, the facts of this case do not support a finding that Son's actions were the *cause-in-fact* of Gause's injuries.

Proximate cause requires proof of: (1) causation-in-fact and (2) legal cause. *Bramlette v. Charter–Med.–Columbia,* 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990). Causation-in-fact is proved by establishing the injury would not have occurred

"but for" the defendant's negligence, and legal cause is proved by establishing foreseeability. *Id.* "A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury, even though such injury would not have happened *but for* such condition or occasion." *Driggers v. City of Florence,* 190 S.C. 309, 313, 2 S.E.2d 790, 791 (1939) (emphasis added). Evidence of an independent negligent act of a third party is directed to the question of proximate cause. *Matthews v. Porter,* 239 S.C. 620, 628, 124 S.E.2d 321, 325 (1962). To exculpate a negligent defendant, the intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged. *Id.* The superseding act must so intervene as to exclude the negligence of the defendant as one of the proximate causes of the injury. *Id.*

In *Matthews,* the respondent, Jacqueline Matthews, brought an action for damages caused by the alleged negligence and willfulness of Grover Porter. *Id.* at 622–23, 124 S.E.2d at 322. On December 25, 1957, at approximately 10:30 p.m., Porter's vehicle collided with a vehicle driven by Issac Singletary. *Id.* at 623, 124 S.E.2d at 322. The vehicles came to rest on the highway, and Porter's vehicle blocked the eastbound lane of traffic. *Id.* Matthews was riding in a vehicle traveling in a westerly direction and arrived at the scene of the collision soon after it occurred. *Id.* Matthews's vehicle stopped on the eastern side of the collision scene and Matthews got out of the car to offer her assistance to a physician who had arrived on the scene. *Id.* Matthews was standing beside Porter's vehicle when another vehicle, driven by Lewis McKnight, skidded sideways down the highway, and pinned Matthews between McKnight's vehicle and Porter's vehicle. *Id.* McKnight would later testify at trial that the night was "dark, foggy, and a drizzling rain was falling." *Id.* at 629, 124 S.E.2d at 325.

Matthews alleged that Porter acted negligently in permitting his vehicle to block the highway so that others could not safely pass, and in failing to warn approaching vehicles of the blocked highway. *Id.* at 623, 124 S.E.2d at 322–23. Porter

alleged that Singletary solely and proximately caused the accident between their two vehicles, and that McKnight solely and proximately caused the second collision between Porter and McKnight's vehicles. *Id.* at 624, 124 S.E.2d at 323. Porter also claimed that police controlled the scene and all traffic thereabout at the time of Matthews's injury, and that his injuries rendered him incapable of removing his automobile from the scene. *Id.*

At trial, a highway patrolman testified that he found debris from the collision in the lane of travel Singletary occupied. *Id.* at 625, 124 S.E.2d at 323–24. This Court relied on this fact, coupled with Singletary's testimony regarding Porter's negligence, in holding that sufficient evidence supported the trial court's finding that Porter caused the initial accident. *Id.* at 625–26, 124 S.E.2d at 324. However, Porter argued that even if he caused the accident with Singletary, McKnight's intervening negligence insulated his own negligent actions. *Id.* at 626, 124 S.E.2d at 324. This Court disagreed, relying primarily on Porter's duty to warn, the weather conditions at the time of the accident, and Porter's discredited testimony that his injuries from the accident rendered him unable to provide the necessary warning to oncoming motorists:

> In an action for injury alleged to be due to the neglect of a duty on the part of the defendant, it is no defense that a similar duty rested upon another person. One upon whom the law devolves a duty cannot shift it to another, so as to exonerate himself from the consequence of its nonperformance. Since [Porter's] negligence had caused the highway at the scene of the collision to be blocked, it was his duty to warn others using the highway of the dangerous condition he had created. He could not delegate this duty to another, even though he was a law enforcement officer, and escape the consequences for its nonperformance by such officer. [Porter] asserts also that he was so disabled in the first collision that he was unable to give a warning that the road was obstructed. The respondent testified that [Porter] was outside of his car and walking around and that, "I asked Mr. Porter if he wanted to sit down, and he said: 'No, I will stand here. I am all right.'" This witness further testified that [Porter] wasn't being held up and that he was standing beside his car. This testimony raised a question of fact as

to whether [Porter] was so disabled that he could not give warning of the dangerous condition that had been created by his negligence.

*Id.* at 631, 124 S.E.2d at 327.

The *Matthews* case is a prime illustration of the requisite prongs of the proximate cause inquiry. Porter caused an accident through negligent operation of his automobile, and then neglected his duty to warn others of the chaotic scene created by his actions. It is reasonably foreseeable that injuries may occur from a vehicle left idle on a highway in adverse weather conditions. Furthermore, Matthews's injuries involved a collision between McKnight's vehicle and Porter's vehicle. Thus, "but for" Porter's failure to move his vehicle, when he undoubtedly could have, Matthews would not have been harmed.

Additionally, I find the court of appeals' decision in *Gibson v. Gross,* 280 S.C. 194, 311 S.E.2d 736 (Ct.App.1984), persuasive.

In that case, the respondent, Gross, struck a telephone pole with his car, and subsequently collided with a car driven by Newland. *Id.* at 195, 311 S.E.2d at 737. Another driver at the scene, Bennett, alleged that Gross's vehicle struck his vehicle, as well, and an argument ensued. *Id.* Gibson, the appellant, noticed the altercation and stopped his vehicle to intervene. *Id.* After halting the argument, Gibson was struck by a vehicle driven by Edwards. *Id.* at 195, 311 S.E.2d at 737–38. Gibson alleged that Gross was negligent in failing to move his automobile off the highway, and warn others that his car blocked the roadway. *Id.* at 196, 311 S.E.2d at 738. The court of appeals disagreed, finding that Gross could not have foreseen that his conduct would cause injury to a person in Gibson's circumstances. The court measured Gibson's claim against the standard articulated in *Stone v. Bethea,* 251 S.C. 157, 161–62, 161 S.E.2d 171, 173 (1968), and reasoned:

> The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another, is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in

light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen. When the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause.

*Gibson*, 280 S.C. at 197, 311 S.E.2d at 738–39.

In the instant case, Gause, and one other police officer, responded to a dispatch call requesting assistance for a highway patrolman who stopped Son on suspicion of drunk driving. According to Gause's trial testimony, the highway patrolman's vehicle and Son's vehicle both occupied the left lane of traffic on the four lane highway. The highway patrolman informed the police officers that "there were issues," with Son's ability to drive the Firebird, and requested their assistance in "taking [Son] off the road for the evening." The police officers placed Son under arrest, and Gause remained at the scene while his fellow police officer transported Son to a detention center. Gause then pulled his vehicle directly behind Son's abandoned vehicle, remaining in the left lane of traffic, and waited for a tow truck to arrive. Gause testified that his only attempt to secure the scene and warn oncoming motorists was to turn on his hazard lights and keep his "blue lights running," because at his location he "lit up the road." Five to ten minutes later, Smithers's vehicle collided with Gause's vehicle, and pushed Gause's vehicle into Son's Firebird. Smithers was intoxicated and did not reduce his speed prior to the collision.

Son's negligent conduct may have created the conditions for Gause's injury, but is not the proximate cause of those injuries. It is not reasonably foreseeable that following Son's initial stop, the police would leave Son's vehicle sitting in the lane of traffic, and then proceed to place a police vehicle behind the car without any other warning to oncoming motorists. Although Gause testified that police policy directed officers to refrain from driving an arrestee's vehicle, this says nothing of his actions related to his own vehicle immediately

after Son's arrest. In my view, actions by law enforcement and Smithers served as intervening acts similar to that in *Gibson*, but dissimilar from the scenario in *Matthews*. The majority's formulation ignores these intervening acts which I believe transformed Son's acts from a possible "but for" cause, to an indirect cause. Unlike the factual scenario in *Matthews*, Son did not neglect his duty to warn others, and was removed from the scene prior to several intervening acts occurring after his arrest.

I agree with the majority's opinion regarding the danger of leaving a vehicle standing in the traveled portion of a highway. However, this danger does not permit ignoring a critical component of our proximate cause standard. Thus, in my view, although there may be evidence of Son's negligence, the evidence in this case was insufficient to raise a jury question as to whether his negligence caused Gause's injuries. *Clark v. Cantrell*, 339 S.C. 369, 388, 529 S.E.2d 528, 538 (2000) (citing *Horton v. Greyhound*, 241 S.C. 430, 441, 128 S.E.2d 776, 782 (1962)); *see also Odom v. Steigerwald*, 260 S.C. 422, 427–28, 196 S.E.2d 635, 638 (1973) ("Even if it was determined that the plaintiff was negligent, there was still one additional question to be answered before the plaintiff would be barred of recovery, and that question was: Did plaintiff's negligence contribute as a proximate cause?").[4]

## CONCLUSION

For the foregoing reasons I would reverse the trial court as to the preceding issues and dismiss Gause's claim with prejudice.

In my opinion, the family purpose doctrine has overstayed its welcome. The doctrine's underpinnings are rooted in obsolete perceptions of gender, societal, and family dynamics. Additionally, the negligent entrustment cause of action, and introduction of insurance coverage for resident relatives and permissive drivers has alleviated, to the extent that the family purpose doctrine ever did, the danger that injured parties will be unable to recover financially from individuals negligently operating a family vehicle.

---

4. I agree with the majority's analysis regarding the verdict form, inadmissible testimony, and punitive damages claims in this case.

170

Justice KITTREDGE:

I dissent and join Sections I and II of Chief Justice Toal's dissent.