# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Government Employees Insurance Company, Plaintiff,

v.

Jack A. Poole, individually and as Personal Representative of the Estate of Jennifer Knight Poole, Defendant.

Appellate Case No. 2017-001540

---

## CERTIFIED QUESTION

---

ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
Joseph F. Anderson, Jr., United States District Judge

---

Opinion No. 27821
Heard February 15, 2018 – Filed July 5, 2018

---

## CERTIFIED QUESTION ANSWERED

---

J.R. Murphy and Wesley B. Sawyer, both of Murphy & Grantland, P.A., of Columbia, for Plaintiff.

Angela Christy Tyner and Ronald A. Maxwell, Sr., both of Maxwell Law Firm, P.C., of Aiken, for Defendant.

Bert Glenn Utsey, III, of Peters, Murdaugh, Parker, Eltzroth & Detrick, P.A., Samuel R. Clawson, Jr., and

Christy Fargnoli, both of Clawson Fargnoli, L.L.C., of Charleston; and Frank L. Eppes, of Eppes & Plumblee, P.A., of Greenville; and Kathleen Chewning Barnes, of Barnes Law Firm, L.L.C., of Hampton, all for Amicus Curiae, South Carolina Association for Justice.

Carmelo Barnes Sammataro, of Turner Padget Graham & Laney, P.A., of Charleston, for Amicus Curiae, Property Casualty Insurers Association of America and the South Carolina Insurance Association.

---

**JUSTICE HEARN:** We accepted a certified question from the United States District Court for the District of South Carolina, asking whether South Carolina law requires that punitive damages be apportioned pro rata between those sustained for bodily injury and property damage, respectively, under an automobile insurance policy. We answer the question, "No."

## FACTUAL BACKGROUND

Jack Poole and his wife, Jennifer, were riding in a vehicle owned by Doris Knight, Jennifer's mother, when a drunk driver crossed the center line and struck them. The Pooles were both seriously injured in the collision; although Jack survived, Jennifer's catastrophic injuries resulted in her death several days later. In contrast with the substantial bodily injuries, the Pooles sustained minimal property damage because they did not own the vehicle. The total value of the Pooles' property damaged in the collision was approximately $1,250.

The at-fault driver's liability carrier tendered its policy limits. Farm Bureau, the insurer on Knight's vehicle, then tendered its underinsured motorist (UIM) policy limits for bodily injury—$25,000 to Jack individually and $25,000 to Jack as the representative of Jennifer's estate. The Pooles then sought recovery from their own insurer, Government Employees Insurance Company (GEICO), which provided them a split limits UIM policy with bodily injury coverage of up to $100,000 per person and $50,000 for property damage. GEICO tendered the UIM bodily injury limits of $100,000 each for Jack and Jennifer's estate. The Pooles requested another $50,000 from the UIM policy's property damage coverage in anticipation of a large punitive damages award, but GEICO refused. GEICO then initiated a declaratory judgment action in the District of South Carolina to establish that it was not liable to pay any amounts for punitive damages under the property damage provision of the

UIM policy because the source of the Pooles' UIM damages was traceable only to bodily injury.[1]

After the parties filed cross-motions for summary judgment, the district court determined the parties presented a novel issue of law[2] and certified the following question to this Court.

## CERTIFIED QUESTION PRESENTED

Under South Carolina law, when an insured seeks coverage under an automobile insurance policy, must punitive damages be apportioned pro rata between those sustained for bodily injury and those sustained for property damage where the insurance policy is a split limits policy?

## DISCUSSION

GEICO raises four grounds to support its claim that South Carolina law requires the pro rata apportionment of punitive damages in this case. We address each in turn and answer the certified question in the negative.

## I. STATUTORY SCHEME

GEICO argues allocation is required by the plain language of the statutory scheme because the insurance code allows for split limits policies. According to GEICO, failure to allocate punitive damages would result in transforming the Pooles'

---

[1] For the purposes of the declaratory judgment action the parties stipulated that an award of punitive damages in this case would exceed all available property damage coverage.

[2] Though not binding precedent, we note a 1971 case from the District of South Carolina addressed a similar situation involving the allocation of punitive damages in automobile insurance policies. *State Farm Mut. Auto. Ins. Co. v. Hamilton*, 326 F.Supp. 931 (D.S.C. 1971). The insurer for the at-fault motorist argued any punitive damages awarded to the victim should be allocated pro rata according to his actual property damages. *Id.* at 935. Finding the statutory definition of "damages" included both actual and punitive damages, and given the insurer's failure to cite any authority for prorating punitive damages, the court concluded punitive damages were not allocable, and the victim could recover his award of punitive damages from the at-fault motorist's property damage liability coverage. *Id.* at 935–36.

split limits policy into a combined single limit policy. While GEICO acknowledges the statutory definition of "damages" includes punitive damages, it contends this requirement must be applied in the split limits context. Therefore, one can collect actual and punitive damages traceable to bodily injury, and likewise for property damage. Under GEICO's theory, if an insurer must pay for punitive damages, those punitive damages are "because of" bodily injury or property damages, respectively.

Mindful of the purpose and enforceability of split limits policies,[3] we nevertheless reject GEICO's statutory argument. South Carolina law requires that carriers offer UIM coverage "up to the limits of the insured liability coverage to provide coverage in the event that **damages** are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist . . . ." S.C. Code Ann. § 38-77-160 (2015) (emphasis added). "Damages" are defined by statute to include both actual and punitive damages. S.C. Code Ann. § 38-77-30(4). Beyond that, the statutes are silent with regard to the apportionment of punitive damages. Thus, by the plain language of the statute, the trigger for UIM coverage is an event that causes damages—actual and punitive—which exceed the liability limits of the at-fault motorist. Even when viewed in the split limits context, the UIM statute makes no mention of allocation nor does it indicate that bodily injury and property damage must be analyzed separately before determining whether UIM coverage is triggered.

Moreover, the rationale behind punitive damages is not to compensate an aggrieved party for his or her underlying injuries to body and property; rather, "punitive damages, in addition to punishing the defendant and deterring similar conduct by the defendant and others, serve to vindicate the private rights of the plaintiff and they provide some measure of compensation to plaintiffs for the intentional violation of those rights *that is separate and distinct* from the usual measure of compensatory damages[] . . . ." *O'Neill v. Smith*, 388 S.C. 246, 252, 695 S.E.2d 531, 534 (2010) (emphasis added). Thus, while actual damages may be traceable directly to bodily injury and property damage, punitive damages are not so easily divisible. Reading the statutes to require allocation of punitive damages would result in adding language to the statutes, rather than merely interpreting them.

---

[3] We note that punitive damage awards are rare in the context of automobile collisions and our holding today does not eliminate the viability of split limits policies. In most cases, plaintiffs are entitled only to recovering their actual damages, and state law has limited the instances in which punitive damages may be awarded. *See* S.C. Code Ann. § 15-32-520(D) (Supp. 2017) ("Punitive damages may be awarded only if the plaintiff proves by clear and convincing evidence that his harm was the result of the defendant's wilful, wanton, or reckless conduct.").

*See Sloan v. Hardee*, 371 S.C. 495, 499, 640 S.E.2d 457, 459 (2007) ("Words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.").   If the General Assembly intended to require the allocation of punitive damages, it could have done so with clear, express language.  Accordingly, because we find the statutory scheme is silent on the issue of allocation, we decline to reach the result urged by GEICO.

II. DUE PROCESS

GEICO argues a failure to allocate punitive damages would result in a violation of constitutional due process.  Citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), GEICO contends a constitutional ratio of punitive damages to actual damages requires allocation.

We believe GEICO's reliance on *Gore* is misplaced, in part, because the issue in this case is not whether punitive damages should be awarded and in what amount; rather, the issue is GEICO's contractual responsibility to pay those punitive damages to which its insureds are entitled.  More importantly, unlike the tortfeasor in *Gore*, GEICO's exposure to punitive damages is limited by the terms of the policy.  In no event would GEICO be liable for punitive damages beyond the policy limits.  From the time GEICO entered into the contract to provide UIM coverage, it was on notice that it may have to pay actual and punitive damages up to the policy limits upon an event triggering coverage.  *See Gore*, 517 U.S. at 574 ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.").  Having accepted payments from the Pooles for UIM coverage up to the agreed upon policy limits, GEICO cannot persuade us that fulfilling its contractual duty to pay those policy limits would somehow result in a violation of due process.  *See O'Neill*, 388 S.C. at 255, 695 S.E.2d at 535–36 ("Plaintiffs accepted [UIM coverage] and paid the corresponding premiums for coverage and are entitled to this contractual benefit.  State Farm set its premiums with the knowledge that they are liable for compensatory and punitive damages under the insurance contract, and it cannot now be heard to complain that the delivery of benefits under the contract would thwart public policy.").

Additionally, the *Gore* court was largely concerned with the rationale behind punitive damages and the connection to the tortfeasor's conduct.  517 U.S. at 575–80.  That issue is not present in this case because the insurance code and the policy itself make clear that the coverage includes punitive damages.  The allocation question does not concern the propriety of awarding punitive damages or the

foreseeability of those damages because GEICO has already contracted to pay those sums. Moreover, GEICO's proposed application of *Gore* is based on the premise that the ratio of punitive damages to actual damages must be bifurcated and analyzed separately for bodily injury and property damage. However, the conduct giving rise to the punitive damages—here, the at-fault motorist's recklessness—is a single, indivisible act. Therefore, the potential award for punitive damages in this case would not be divided based on two separate occurrences or acts.

GEICO's liability for punitive damages is contingent upon the contract, and it arises from the at-fault motorist's conduct. The at-fault motorist committed a single negligent act giving rise to the Poole's damages. GEICO has not produced any authority to suggest that punitive damages must be bifurcated according to each type of damages. To the contrary, the constitutionality of a punitive damages award is simply measured against (1) the degree of the defendant's reprehensibility or culpability; (2) the relationship between the penalty and the *harm* to the victim caused by the defendant's actions; and (3) the sanctions imposed in other cases for comparable misconduct. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 434–35 (2001). Therefore, we conclude due process limitations do not require the pro rata apportionment of punitive damages in this case.

## III. CONTRACTUAL LANGUAGE

GEICO next argues faithful adherence to the contract requires pro rata apportionment of punitive damages. However, given our limited capacity in answering a certified question, we abstain from ruling on the construction and interpretation of the contractual terms at this juncture. We believe such a determination is properly reserved for the district court, where the presiding judge has the ability to review the contract in its entirety and is privy to any testimony or other documents which may be admissible in interpreting the contract. Therefore, we do not address GEICO's argument that the insurance agreement must be construed to require apportionment of punitive damages.

## IV. PUBLIC POLICY

Lastly, GEICO argues public policy is served by finding South Carolina law requires the apportionment of punitive damages in the UIM context. We, however, find this concern is best addressed by the General Assembly, which is in the proper position to make such policy determinations given its ability to conduct studies, collect information about insurance rates, and weigh the various courses of action.

Accordingly, we decline to find that public policy, as a matter of law, requires the pro rata apportionment of punitive damages.

## CONCLUSION

Based on the foregoing, we answer the certified question in the negative and hold that South Carolina law does not require punitive damages be apportioned pro rata between bodily injury and property damage in a split limits automobile insurance policy.

**CERTIFIED QUESTION ANSWERED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**